## Pittsburgh & Connellsville Railroad Co. *versus* Sentmeyer.

1. A servant or employee assumes the risk of all dangers in his employment, however they may arise, against which he may protect himself by the exercise of ordinary observation and care.

2. The master's liability arises from the fact that he subjects his servant to dangers which in good faith he ought to provide against, but he is not responsible for those dangers to which the servant voluntarily subjects himself, though he does so without carelessness or breach of duty.

3. Where an employer has furnished his employees with tools and appliances, which though not the best possible to be obtained, may by ordinary care be used without danger, he has discharged his duty and is not responsible for accidents.

November 22d 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Fayette county:* Of October and November Term 1877, No. 289.

[Pittsburgh & Connellsville Railroad Co. v. Sentmeyer.]

Case by Daniel Sentmeyer and Susan Sentmeyer, his wife, against the Pittsburgh & Connellsville Railroad Company, to recover damages for the death of their son, alleged to have been killed by the negligence of defendants. The son of the plaintiffs, a young man about sixteen years old, was employed as a brakeman on a freight train of the defendant company. While thus employed, on the 26th of March 1872, he was knocked or fell off the top of a freight car and was killed, under the following circumstances : A train of empty cars, coming from Brinton to the coke works below Connellsville, was divided into two sections, one running some time behind the other. Sentmeyer was flagman on the first section, and for some cause (which did not appear) was directed to get off and go back and flag the section which was behind. He did so, and when it started he got on the engine of this section to ride until he overtook his own train. This was some twenty miles below where the accident occurred. On this section he had nothing to do but to remain on the engine until he reached his own section. At the place he was killed, there were coke ovens near the upper side of the railroad, from which had been built, many years before, a narrow bridge or gangway, running over the railroad, something over fifteen feet high, on which the ashes from the coke ovens were wheeled over to get them out of the way. Before the train came to this gangway, Sentmeyer left the engine on which he was, and passed upon and over the top of the cars, for some purpose unknown, and in passing under this gangway was knocked off and killed, and for the loss of his life under these circumstances his parents brought this suit. He had been in the employ of the company about a year.

On the trial the defendants having proved that the only place Sentmeyer had a right to be, on that section of the train, was on the engine, claimed that having left that place of his own accord, and gone where he had no business and had no right to be, the plaintiffs were not entitled to recover.

The following were among the points of plaintiffs, all of which the court affirmed :

1. That by entering defendants' service, George W. Sentmeyer assumed only the ordinary and reasonable risks incident to such service ; and if .the jury believe from the evidence that it was required of employees of the company, of the same class as Sentmeyer, and was usual and customary for them, to be on the top of freight and stock cars while in motion, and that defendant permitted a bridge to be erected and maintained over its track of a height insufficient to allow the safe passage of persons while on the top of such freight or stock cars, and that while on the top of such cars Sentmeyer was knocked off and killed, while in the service of the company; they may find that the death of Sentmeyer was caused

by such negligence of the company, as would make it liable to the plaintiffs in damages therefor.

3. That Sentmeyer had the right to assume that if the company required other employees of the same class to be on top of the freight cars while in motion, they could be there without being exposed to danger to their lives, and they may find that if he, while in the service of the company, went only where other employees of the same class were required to go habitually, and was killed while there, by coming in collision with a bridge which the company allowed to be kept and maintained there of insufficient height to allow the safe passage of persons in such a place, he was not guilt of such contributory negligence as would relieve the company from responsibility for his death.

6. That before Sentmeyer can be fixed with contributory negligence it must have been shown that he was in fault in doing what he did ; that he was not innocent but was incautious ; and if the jury believe that he went only where other employees of the same class went and were required to go, and did no more than they did, they may find that he was not in fault nor incautious, but innocent.

7. That before the jury can find that Sentmeyer was guilty of contributory negligence by being out of his place, they must be satisfied from the evidence that there was a certain place for him by the rules of the company ; and evidence that flagmen, taken up like he was, usually rode on the engine, and that his death occurred while he was in another place where other employees of the same class were required to be, is not of itself sufficient to charge him with contributory negligence.

8. That if Sentmeyer was out of his place, he is not chargeable with contributory negligence by reason thereof, unless he was guilty of actual negligence by being where he was.

The following were among the points submitted by defendants, with the answer of the court thereto :

6. That if the jury believe that George W. Sentmeyer was a flagman, and that his position as such was on the engine of the train or section on which he was at the time of the supposed accident, and that he left the engine and passed over the top of the cars, he left his position and was out of the line of his duty and it was at his own risk, and the accident was caused by his own negligence, and the plaintiffs cannot recover.

Ans. " Refused."

7. That the defendant corporation having had the bridge complained of in this case constructed of sufficient height, it is not liable to an employee for injury, when the sinking of the bridge, if any such there was, was not apparent, and of which it had no notice.

[Pittsburgh & Connellsville Railroad Co. v. Sentmeyer.]

Ans. "Refused. We cannot say that the bridge was con-structed of sufficient height; that is a question for the jury."

8. That George W. Sentmeyer, the deceased, having been in the employ of the defendant company for many months, running on the road as a brakeman, had every opportunity of informing himself of the position and height of this bridge, and danger aris-ing therefrom was clearly incident to the labor he undertook to perform. Therefore the plaintiffs cannot recover.

Ans. "If the jury. find that deceased had every opportunity of informing himself of the position and height of the bridge, then the point is affirmed; otherwise it is refused."

Verdict for plaintiffs for $2351.38, and after judgment defend-ants took this writ assigning for error, inter alia, the answers to the above points.

D. *Kaine* and *Wm. H. Coldren*, for plaintiff in error.—An employee entering the service of any railroad company assumes all the risks incident to that business upon that particular line or road, and is presumed to inform himself of the location and per-manent construction thereof: Devitt *v.* The Pacific Railroad Com-pany, 3 American Railway Cases 533. All the questions in the case at bar were ruled in this case.

The deceased clearly entered this employment and assumed this particular risk, with knowledge thereof, and so remaining for many months had every opportunity of informing himself, and when he left the engine and passed over the roof of the cars he left his duty and was there as a stranger, and the risk was his own: Owen *v.* New York Central Railroad Co., 1 Lansing 108.

C. *E. Boyle*, for defendants in error.—The deceased when he entered the employment of the company assumed only the ordinary and reasonable risks incident to said employment: Patterson *v.* P. & C. Railroad Co., 26 P. F. Smith 389. The plaintiff's case was based on the charge that by permitting the bridge to be erected and maintained, as it did, the company was guilty of negligence—that it was not one of the risks that Sentmeyer assumed. This question was fairly and properly submitted to the jury ; and they found it in favor of plaintiffs: Pennsylvania Railroad Co. *v.* Kil-gore, 8 Casey 292; Sh. & Redf. Neg., sect. 283.

The main question in the case was as to whether Sentmeyer had been guilty of contributory negligence. The burden of prov-ing this was on the company : Beatty *v.* Gilmore, 4 Harris 463; Canal Co. *v.* Bentley, 16 P. F. Smith 30; C. & P. Railroad Co. *v.* Rowan, Id. 393.

In the case of Owen *v.* New York Central Railroad Co., 1 Lan-sing 108, relied on by plaintiff in error, it appears "the brakeman entered into his employment with knowledge of the bridge's

position and height, and had opportunity to learn of its continuance." So in Devitt v. Pacific Railroad Co., 3 Am. Railway Reports 533 (Missouri), it appeared that the deceased "had been repeatedly warned to look out for this and other bridges." * * "That he knew the danger of coming in contact with said bridge, that his attention had been called to the danger of injury from the lowness of bridges on his route, and that with this knowledge, &c."

Mr. Justice GORDON delivered the opinion of the court, January 5th 1880.

Where a railroad company voluntarily subjects its employees to dangers which it ought to provide against, and an accident happens to an employee from a want of proper provision against such dangers, the company is undoubtedly liable. But, on the other hand, it is not liable for accident happening from the ordinary risks and dangers of the business, for it is a legal presumption that the servant assumed the risk of such accidents when he entered the service of the company. Patterson v. Railroad Co., 26 P. F. Smith 389. Again, we may further extend this rule by saying, that the servant, or employee, assumes the risk of all dangers, however they may arise, against which he may protect himself by the exercise of ordinary observation and care. Furthermore, the master's liability arises from the fact that he *subjects* his servant to dangers which in good faith he ought to provide against, but he is not responsible for those dangers to which the servant voluntarily subjects himself, though he does so without carelessness or breach of duty. These principles govern this case. The bridge, by which young Sentmeyer was killed, was fifteen feet and six inches in height from the top of the railroad rails, whilst the height of the cars varied from nine to ten and one-half feet; thus, for the lower cars the bridge was sufficiently high, but for the higher ones, several inches too low. Sentmeyer had been, for several months previous to the accident, employed as flagman on one of the trains of this road, and therefore had, or ought to have had, knowledge of the height of the cars used upon it and also of the height of this bridge. These were matters which addressed themselves to his own observation, and, as we have already said, for the prudent exercise of that observation he was responsible. But did he give such attention to the dangers to which he was exposed as an ordinarily prudent man should have given to them? Certainly not, or the accident would not have occurred. He had, almost every day for a month, passed and repassed under that bridge; he knew just where to look for it, and if he paid any attention to it whatever, he must have known that when standing at full length upon a car of medium height, say nine feet six inches, there was but an inch or two between the bridge and the top of his head. What shall we say,

then, of that man's prudence who would thus risk his life on the difference of two or three inches in the height of a car? But the court below held the company rigidly to what it regarded as its duty in regard to the bridge, without any reference to the duty resting upon the deceased to give heed to a known and obvious danger and prudently to care for himself. "If," reads the plaintiffs' first point, "the jury believe from the evidence that it was required of the employees of the company, of the same class as Sentmeyer, and was usual and customary for them to be on the top of freight and stock cars whilst in motion, and the defendant permitted a bridge to be erected and maintained over its track of a height insufficient to allow the safe passage of persons while on the top of such freight or stock cars, and that while on the top of such cars Sentmeyer was knocked off and killed, while in the service of the company; they may find that the death of Sentmeyer was caused by such negligence of the company, as would make it liable to the plaintiffs in damages therefor." This point was affirmed without qualification, and it amounts to an instruction that the defendant was bound to have all the bridges, crossing its road, of such a height that whether its employees were careful or negligent no damage could result to them therefrom.

But what is the logical result of a doctrine such as this? Is it not, that the company must not only guard its servants from probable but also from possible dangers, and that it must place no dependence on their care and skill even in the matter of their own preservation and personal safety? That it must provide against their very negligence and become an insurer of their limbs and lives? We need not say this will not do; that neither natural nor artificial persons can bear a burden such as this, neither ought they so to do. When men are hired something must be predicated of their judgment and prudence, and, hence, when the employer furnishes them with tools and appliances, which, though not the best possible, may, by ordinary care, be used without danger, he has discharged his duty and is not responsible for accidents.

But again: the defendant was liable for the consequences of such dangers as it subjected the employee to, and not for those to which he subjected himself. He was the flagman of the preceding train, and his only duty on the train from which he was killed, was to ride upon it until he overtook his own train. His business was simply to take care of himself, and the whole duty of the company was discharged by affording him a safe place to ride. On that train there were two such places, the caboose and the locomotive; he might have taken either and been perfectly safe; he took neither, but chose the top of the cars, the place of all others the most unsafe. No duty to the company called him to this position; he chose it of his own free will; he put himself in the place of danger and the direct consequence of this, his own voluntary act,

[Pittsburgh & Connellsville Railroad Co. v. Sentmeyer.]

was the loss of his life.  For this, surely, the company was not liable, for it required of him no such risk.  It furnished him with a safe conveyance, all it was at that time bound to do, and if he chose to turn that safe conveyance into one of danger it was no fault of the company.

As this disposes finally of the whole case, we will not dwell on any particular exceptions.

Judgment reversed.