ELLEN M. COWHILL, as Administratrix of JOHN COWHILL, Deceased, Appellant, v. PERCIVAL ROBERTS, Respondent.

*Master and servant — dangerous employment — defective appliance — constructing an elevated railroad — the servant's knowledge of the danger.*

Where a servant enters upon an employment which from its nature is necessarily hazardous, he assumes the usual risks and perils of the service, and also those that are known to him, and which are apparent to ordinary observation.

In an action by a servant against his master to recover damages occasioned by defective appliances or machinery, the plaintiff must establish that the machine or appliance was defective, that the master had knowledge or notice thereof, or ought to have known it, and that the servant did not know, and had not equal means with the master of knowing thereof.

The usual and necessary method of the erection of the columns and girders, in constructing an elevated railroad, cannot be considered defective as a matter of law, in the absence of evidence that there was any other usual or even practical method of erection by which an accident suffered by a workman in connection therewith might have been avoided, or the risk of it diminished.

A workman in the employ of the builder of an elevated railroad, which was being constructed, in the usual manner, of columns and girders put in place by the use of a traveling derrick, for his own convenience, and when not required by his work to do so, climbed to the top of the structure by the lattice work on a column, no ladder being provided, and fell by reason of his fingers slipping from an icy brace on a temporary girder, and was killed. His legal representative brought an action for damages against the employer, claiming that he was responsible for negligence, first, in allowing the brace to be used, and, second, in not providing a ladder. It appeared that the deceased had been accustomed to climb the lattice work on the columns, as the other workmen did, and that the braces on the girders were entirely apparent and had been in position for several days, during which time the deceased had been working where they were, so that he could have seen them.

*Held*, that the facts showed the absence of negligence on the part of the employer and the presence of carelessness on the part of the deceased, which prevented a recovery.

APPEAL by the plaintiff, Ellen M. Cowhill, as administratrix of John Cowhill, deceased, from a judgment of the Supreme Court, entered in the office of the clerk of Kings county on the 8th day of February, 1893, upon a direction of the court dismissing the complaint upon the merits at the Kings County Circuit, and from an order denying the plaintiff's motion for a new trial made upon the minutes.

*Horace M. Hitchings,* for the appellant.

*Geo. W. Wingate,* for the respondent.

DYKMAN, J.:

This is an appeal from a judgment and order denying a motion for a new trial.

The action was for the recovery of damages resulting to the plaintiff by the death of her intestate, John Cowhill, deceased, which is claimed to have been caused by the negligence of the defendant.

The deceased was in the employment of the defendant, who was engaged in the construction of an elevated railroad in Myrtle avenue, in the city of Brooklyn. The railroad was constructed by placing iron columns fifty feet apart on the curb line of the street, and the columns were connected by transverse girders, upon which were placed four longitudinal girders which supported the track. These girders were hoisted into place by a moving derrick called a traveler, which was placed upon the top of the structure, and was moved along as the work progressed. Upon the sides of the column were lattice work, and each girder had a broad flange at its top and bottom. The girders at this point were five feet high. The deceased man had been working upon this road for the defendant for about two months. The work was of a dangerous character, and required active men. As there was to be a station at the point of the accident one of the iron girders could not be put in until the traveler had passed, and its place was supplied by a temporary wooden girder which was braced by wooden braces six by three inches and eight to ten feet long, extending to the ends of the girder, where they were fastened into the flanges, and wedged by a wooden block. This was the method which had been pursued at

another station on which the plaintiff had worked, and the bracing was the customary one and was necessary.

To go upon the structure the workmen climbed up the lattice work of the columns and then put one arm around the girder, and the other on top of it, and climbed up in that way. The woodwork had been up there for two or three days before the accident. The deceased was working upon the ground at this time, and the workmen who worked on the ground kept their coats in a box on the sidewalk.

The morning of the accident was a cold, frosty morning, and the structure was covered with ice. The deceased was a little late and climbed up one of the columns to leave his overcoat and lunch and put on his overalls, five minutes before seven, the time at which he was required to be at his work.

It is claimed by the plaintiff's counsel that when the deceased reached around the girder to catch hold of the flange he struck it against the block which held one of the braces, from which his finger slipped, and that the defendant is responsible for negligence, first, in allowing the brace to be used, and, second, in not providing a ladder.

The testimony is that the ladder had not been used upon this work; that the bracing was such as had been used on the work before, and was customary and necessary to support the weight of the traveler.

The witnesses on the part of the plaintiff testified that the wooden brace, which it is claimed was the cause of the accident, was usual and necessary in the progress of the construction of the road; that they had been up for several days, during which the deceased worked around them, and had the same opportunity of knowing of their existence as the other workmen.

The brother of the deceased man testified that his brother had not commenced work on that morning previous to the accident; that he had his overcoat on, and that it was a cold, frosty morning; that there was ice on the work, and that when water fell it was frozen, and being a few minutes late he was going up with his overcoat on.

Michael Gordon, a witness on the part of the plaintiff, testified as follows: " John's work was with the raising gang; they had a traveler putting up the columns and cross-girders; his work was on the

ground; he was one of the gang who worked ahead of the traveler on the ground, and when a pillar or column was swung into position the nearest man climbed up there and adjusted the cross-girder; he was engaged at this time around the traveler; he was working on the ground; when he went up there he went up for no other purpose than to leave his coat and lunch and put on his overalls; that was before he reported for duty, five minutes before seven; we were required to go to work at seven o'clock A. M."

It may be remarked here in passing that the testimony shows that the deceased did not climb this column for any purpose of the defendant; that he had not commenced work on that day, but went up the column for his own purpose and convenience to put his overcoat and lunch on the top of the structure, and put on his overalls; that the prosecution of the work in which he was engaged at that time did not require him to climb the column.

The failure to provide a ladder cannot be assigned for negligence in this action, first, because the deceased was not at that time required to ascend the structure, and, second, because the deceased had been climbing the structure by the lattice work on the columns as the other workmen did, and the risk of such climbing was entirely apparent, and was a hazard of his employment which he assumed and perfectly understood.

The fact that there was no ladder was apparent to the deceased, not only before he climbed this column, but during his term of employment for some time previous.

It is important to note that there was no imperfection in any of the appliances used; that nothing gave way, and it seems a fair deduction from the facts and circumstances that the fall of the deceased was caused by his failure to grasp the girder in his attempt to ascend the structure.

It has come to be settled in this State that "where, however, a servant enters upon an employment from its nature necessarily hazardous, he assumes the usual risks and perils of the service, and also those that are known to him or which are apparent to ordinary observation." (*Williams* v. *D., L. & W. R. R. Co.*, 39 Hun, 432.)

In *Kennedy* v. *The Manhattan Elevated Ry. Co.* (33 Hun, 457), it was held that an elevated railroad was not liable for a failure to provide a footwalk for watchmen on the structure, and that if one

was struck by a train through the engineer's carelessness, the company was not liable.

In that case, the court said the defendant was not bound to secure protection of the person employed against such risks of injuries as are incident to the employment itself. Where the nature of the servant's " employment requires him to make use of the instrumentalities as they had been located in that vicinity, it was all clearly and evidently before his eyes, and within his comprehension, he must have understood that in the discharge of his duties he subjected himself to the risk of just such an accident as was encountered by him, and as that was clearly indicated by the situation and the circumstances under which he was obliged to act, that was one of the risks incident to his employment."

While this rule may not be applicable in all cases of casualties resulting from the use of complex machinery, it is applicable to this case, where the risk was as apparent to an ordinary workman as to an expert.

In the case of *Gibson* v. *The Erie Railroad* (63 N. Y. 449), it was said by the court : " When the deceased entered the employment of the defendant, he assumed the usual risks and perils of the service, and also the risks and perils incident to the use of the machinery and property of the defendant, as it then was, so far as such risks were apparent.

" Accepting service with a knowledge of the character and position of the structures, from which the employee might be liable to receive injury, he could not call upon the defendant to make alterations to secure greater safety, or in case of injury from risks which were apparent, he could not call upon his employer for indemnity."

If the defects in the machinery or other appliances are as well known to the servant as to the master, the servant must be regarded as voluntarily incurring the risk resulting from its use, unless the master urging on the servant, contributes to the injury.

" A servant who has accepted service with knowledge of the character and position of structures from which he may be liable to injury, in case of injury resulting therefrom, cannot maintain an action against his employer for indemnity. He assumes apparent risk, and cannot call upon his employer to make alterations to secure greater safety." (*DeForest* v. *Jewett*, 88 N. Y. 264.)

" The law also implies a contract on the part of the employee that he will assume the ordinary risks which are incident to the business in which he is employed. One of these risks is that structures or appliances may turn out to be defective notwithstanding the exercise of due care by the employer to provide such as are safe and proper for the purpose for which they are designed. In this State the rule stated is well settled." (*Devlin* v. *Smith*, 25 Hun, 208; 89 N. Y. 476.)

It may now be assumed as settled, that in an action by a servant against a master to recover damages occasioned from defective appliances or machinery, the plaintiff must establish first, that the machine or appliance was defective, that the master had knowledge or notice, or ought to have known it, and that the servant did not know, and had not equal means of knowing with the master. None of these conditions have been established in this case.

The usual and necessary method of erection clearly cannot be considered defective, as a matter of law, in the absence of evidence that there was any other usual or even practical method of erection from which an accident like this might be avoided, or the risk of it diminished.

It is shown the deceased had the same means of knowing of the existence of the braces and the exact condition of the affairs as the employer; in fact, he had better means of knowledge, as he could see, on the morning of the accident, that the structure was covered with ice so as to make it dangerous to climb up the column, where there was no time or opportunity for the employer to become aware of such state of facts.

The braces and the manner of their attachment had been in position for days, during which the deceased had been working where they were so that he could have seen them.

There is no foundation for the contention that the deceased should have been instructed in respect to their existence, as they were plainly visible to the eye.

We have, then, the case of a man working on and around this structure for about two months, and who was shown to have been a first-class workman, entirely familiar with the method of erection, and accustomed to going up these columns, and to hold the defendant liable for injuries under such circumstances would be equivalent

to making a master an insurer of the lives of his workmen. This view seems to be sufficient to show the absence of negligence on the part of the defendant and the presence of carelessness. on the part of the deceased.

At the very least, it fails to make a case which, under the settled rule of law in this State, entitles the plaintiff to a recovery. The judgment and order appealed from should be affirmed, with costs.

BARNARD, P. J., and PRATT, J., concurred.

Judgment and order denying new trial affirmed, with costs.