Relyea vs. Tomahawk Pulp & Paper Co.

RELYEA, Appellant, vs. TOMAHAWK PULP & PAPER COMPANY, Respondent.

*April 9 — April 30, 1901.*

*Master and servant: Personal injuries: Safe place to work: Assumption of risk.*

1. The general rule that a master must furnish a reasonably safe place to work and reasonably safe appliances is subject to the modification that, but for positive prohibition by law, the master may construct and equip his factory as he sees fit, without liability to an employee who, with knowledge or adequate means of knowledge, chooses to take the risks thereof.

2. Plaintiff for about five years had been employed in factories, and in paper mills most of the time for three years prior to his injury, the last two and one-half months in that of the defendant. He was accustomed to use in his work a pine plank, pivoted by a bolt at one end, and resting loosely at the other on a smooth iron plate, covered with grease. *Held,* that the risk of the wearing of the plank, by continually swinging around an iron bolt as a pivot, and the probability of its slipping on the smooth and greasy iron surface, if by leaning over he subjected it to lateral pressure, were perils plain before his eyes, of which he must be deemed to have assumed the risk.

3. Where the perils of the employment have developed in the natural course of the use of appliances by an employee and his companions, failure to observe them is quite as inconsistent with due care on his part as on the part of the employer or any of his representatives, and the employee must be held to have known and assumed the risks of such disrepair by continuing in the employment without protest.

APPEAL from a judgment of the circuit court for Lincoln county: CHAS. M. WEBB, Judge.  *Affirmed.*

An action for personal injuries received by the plaintiff while engaged as back tender in the paper mill of the defendant, on June 28, 1896. Plaintiff was substantially twenty years of age, had been employed in factories from the time he was fifteen, and in paper mills most of the time for three years prior to his injury, in and about work similar to that he was required to do for the defendant.  He had been employed in the same capacity in defendant's mill, and about the same machine, for two months and a half, at the time of his injury.    That machinery consisted of, first, what is known as the press machine, consisting of rolls whereby the water is pressed out of the pulp, and it reduced to such consistency as to enable it to be carried along as a sheet of paper.    Thereupon it passed from the upper part of the press machine across a space of about three feet, to the drying machine, which consisted of a series of large steel rolls, heated, around which, in succession, it was to pass to be dried.    These rolls, in number fourteen, some three feet in diameter and five feet in length, were arranged successively in a longitudinal iron frame, which rose about eighteen inches from the floor, and at each roll was surmounted by a structure to support the journal of the roller.    The top of this frame was flat iron, five or six inches in width, and apparently might be used by the employees to step up onto or stand upon if necessary.    This longitudinal frame was interrupted between the press machine and the dryer, there being a space of about two feet and a half, where it was cut away to enable easy access for a man between the last press roll and the first dryer roll to carry the paper sheet across whenever necessary, and to engage it with the sheet of felt which carried it along under the front side of the first dryer roll.  In this process it was customary for one man to stand in the space between the press machine and the first dryer

roll, and for another man, usually the plaintiff, to stand upon a board which spanned this breach in the iron frame. That board was fastened to the frame at the dryer side of this opening by a securely fastened bolt, on which it moved as a pivot, being swung into place with the other end resting upon the frame of the press machine, without anything to secure it. When not in use for the purpose above stated, it was ordinarily thrown open, and back against the dryer machine. It had been in use for about a month before plaintiff's employment, and continuously up to the time of the injury. It had on one occasion worked loose around the bolt, and a washer had been put on, and the bolt again screwed down and battered down, so that it was tight, and some force had to be exercised to push the board around so as to span the opening or to pull it out of the way. Where the free end rested upon the iron frame of the press machine the iron was smooth, and was subject to the continual dripping of oil and grease. The board was about the same width as the iron frames on which its two ends rested, and neither before nor after the accident had it been discovered but that it rested smoothly and securely at both ends. On the day in question the plaintiff mounted this board for the purpose of carrying the end of a sheet of paper from the press over to the dryer roll, standing about midway between the two, and apparently a couple of feet from the latter. He observed a stray piece of paper sticking to the dryer roll, which it was necessary to remove, and, still standing upon the board, he reached over diagonally into that machine, and attempted to pick it off at a point just above the point of contact between the rapidly moving felt and the hot dryer roll, whereupon, according to his story, the board tipped a little and slipped out backward, and he was thrown forward, and his hand drawn in between the roll and the felt and injured. He had occasion to use this board from five to fifteen times per day, and, while it was

sometimes swung in and out of place by his associate, that
was frequently done by himself. Some evidence was offered
that such boards were not ordinarily used in other factories,
and the plaintiff testified that he had never seen one else-
where; that in some he was accustomed to stand upon an
iron step made for the purpose, and in others to stand
astride of the opening, with a foot on the frame of each
machine. At the close of the evidence a verdict was di-
rected for the defendant, upon which judgment was entered,
whence this appeal.

*J. C. Kerwin*, for the appellant.

For the respondent there was a brief by *A. H. Wood-
worth*, attorney, and *Curtis, Reid, Smith & Curtis*, of coun-
sel, and oral argument by *Mr. Woodworth* and *Mr. A. H.
Reid*.

Dodge, J. The plaintiff is a little vague as to the spe-
cific failure on defendant's part which is claimed to consti-
tute a breach of its duty to furnish a reasonably safe place
for plaintiff to work. He seems to assert defect in original
construction of the apparatus in using a board pivoted by a
bolt at one end, and resting loosely at the other on a smooth
iron plate, because the defendant should have foreseen that
by continual use the pivot would become loose, the board
would become uneven, and the iron surface, on which the
loose end rested, would, by dripping of oil, become slippery,
so that that end of the board might slip off. He seems also
to suggest that defendant was negligent because some or all
of these troubles had ensued and not been repaired. The
trial court held that no defect in original construction was
assigned by the complaint, and that the mere lack of repair
was necessarily as obvious and well known to plaintiff as
to the master or any of its employees, and he must be held
to have either assumed the risk thereof or been as much
guilty of negligence in using the device as the master was

in permitting it to remain for use. The general principles of law governing this class of cases are now so trite as hardly to justify their restatement. The general rule that the master must furnish a reasonably safe place and reasonably safe appliances is subject to the modification that, but for positive prohibition by law, the master may construct and equip his factory as he sees fit, without liability to an employee who, with knowledge or adequate means of knowledge, chooses to take the risks thereof. *Osborne v. Lehigh Valley C. Co.* 97 Wis. 27; *Mielke v. C. & N. W. R. Co.* 103 Wis. 1. In the light of this rule it matters little whether the arrangement in question was vicious in original design and construction, because likely to become loose and insecure as a necessary result of its ordinary use, or because the unsecured end was naturally likely to slip out from under one using it, or whether it had become dangerous by getting out of repair in these respects. There can be no doubt that any such peril from original construction or any defect which had developed in the course of its use was as patent to plaintiff as to the defendant. He, a man with five years' mechanical experience, did not need to be informed of the likelihood of the wearing of a pine plank continually swinging around an iron bolt as a pivot, nor of the probability that a plank might slip where it rested loosely on a smooth and greasy iron surface, if by leaning over he subjected it to lateral pressure. These perils were plain before his eyes. He must be deemed to have accepted them and assumed the risk. If, on the other hand, those perils had developed in the natural course of the use of the appliances by himself and his companions, failure to observe them would be quite as inconsistent with due care on his part as on the part of any representative of the employer, for the very use he made of them, namely, the opening and closing of the board and stepping thereon in the course of his work, was obviously the surest means of discovering such defects as are

now claimed to have existed.   He must, equally, be held to have known and assumed the risks of such disrepair by continuing in the employ without protest.   The action of the trial court in directing verdict for the defendant was therefore justified on the ground that plaintiff had assumed the risks of the defects from which he claimed to have suffered, and we need not consider whether the testimony as to existence of such defects was credible in view of the physical facts, nor whether plaintiff was conclusively shown guilty of contributory negligence in the performance of his work, both of which questions are discussed.

We find nothing material to our conclusion in the rejection of certain evidence.   The result must have been the same had it been admitted and considered.

*By the Court.*— Judgment affirmed.

BARDEEN, J., took no part.