(101 App. Div. 18)

### NELSON v. CITY OF NEW YORK.

### DIGBY v. SAME.

(Supreme Court, Appellate Division, Second Department.   January 3, 1905.)

1. MASTER AND SERVANT—SERVANT'S INJURIES—EVIDENCE.

   Plaintiff, in an action for injuries to a servant, cannot recover where the evidence shows that it is as probable that the injuries resulted from a cause for which the master was not responsible as from a cause for which he was responsible.

2. SAME.

   In an action for the death of a servant in a boiler explosion, evidence *held* to warrant a finding that the explosion was caused by the weakening of the boiler from the action of chlorides contained in the water.

3. SAME—NEGLIGENCE OF MASTER—EXPLOSION OF BOILER.

   Where a master furnished for use in a boiler water containing chlorides, which caused an increased corrosion of the boiler, it was his duty to warn the engineer and fireman of the danger, and make close inspection of the boiler.

4. SAME—ASSUMPTION OF RISK.

   An engineer and fireman do not assume the risk arising from corrosion of the boiler due to the corrosive action of chlorides contained in the water used in the boiler.

Appeal from Trial Term, Queens County.

Action by Margaret Nelson, as administratrix of the goods, chat-tels, etc., of James Nelson, deceased, against the city of New York, and action by Bridget Digby, as administratrix, etc., of William Digby, deceased, against the same defendant.   Appeal in each case by the defendant from a judgment in favor of plaintiff, and from an order denying a new trial.   Affirmed.

These actions were brought to recover damages for the negligent killing of James Nelson, a fireman, and William Digby, an engineer, in the employ of the city of New York, who lost their lives in consequence of the explosion of a boiler at a city pumping station in the borough of Queens.   The cases were tried together by the consent of counsel, and with the sanction of the

court, and resulted in a verdict of $8,000 for the plaintiff in the Nelson suit, and $12,500 for the plaintiff in the Digby suit.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

James D. Bell (John E. Walker, on the brief), for appellant.
John B. Merrill, for respondents.

WILLARD BARTLETT, J. Recognizing the defendant's duty to furnish the fireman and engineer a reasonably safe place in which to do their work, and reasonably safe appliances to work with, the learned assistant corporation counsel insists that this duty was performed. The theory of the defendant's negligence, as the issues were submitted to the jury by the learned trial judge, was based solely on the proposition that the water furnished for use in the boiler which exploded was so overcharged with chlorine as to be dangerous for the use to which it was put, on account of its corrosive action on boiler metal. To the corrosion caused by this water, the plaintiffs attributed the fatal explosion. Counsel for the appellant deny the sufficiency of the evidence to establish this conclusion. They argue that the explosion could have been brought about by carrying an excessive head of steam, or by the imprudent introduction of cold water into the heated boiler, just as well as by the chemical action of the chlorine with which the water was charged; and they rely upon the doctrine that where damage has been inflicted by one of two causes, for one of which the defendant is responsible, and for the other of which he is not responsible, the plaintiff cannot succeed where it is just as probable that the damage was done by one cause as by the other. Searles v. Manhattan Railway Co., 101 N. Y. 661, 5 N. E. 66; Ruppert v. Brooklyn Heights R. Co., 154 N. Y. 90, 47 N. E. 971; Laidlaw v. Sage, 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216. If the record disclosed such a condition of the evidence as this argument asserts, the principle of law invoked would, of course, demand a reversal. But the proof, as I read it, preponderates clearly in favor of the contention that the explosion of the boiler was due to the corrosive chemical action of the water furnished for the city for use therein, and negatives the idea that it could have been produced by the other causes which are suggested in behalf of the appellant. The plaintiffs proved, without substantial contradiction, that the water contained a percentage of chlorine which unfitted it for use in boilers, on account of the resulting corrosion, and then called an expert witness, whose qualifications were not questioned, who expressly testified that he had examined the boiler metal, and that the cause of the explosion was the weakening of the boiler from the action of the chlorides contained in the water. With this evidence in the case, and nothing before them to controvert it, the jury were quite justified in adopting the opinion of the witness, and in attributing the explosion to the same cause which he did.

It is doubtless true, as counsel for the appellant suggest, that the use of water containing some chloride is not negligence of itself. When, however, a master furnishes water to his servant for

use in a boiler, which water is so constituted chemically that it gives rise to a rapid corrosion and consequent weakening of the boiler, not produced by water ordinarily employed for boiler purposes, he owes some duty of warning against the increased danger arising from such corrosion, or the adoption of some other safeguard for the protection of the servant. There is no evidence that the deceased fireman and engineer were ever informed as to the dangerous nature of the water, and they could not reasonably be expected to possess the expert knowledge necessary to enable them to ascertain its chemical nature and effect for themselves. There is a statement from an officer of the water department having superintendence of the pumping station where the accident occurred to the effect that the boilers there were inspected every six weeks, but we are told nothing in regard to the character of the inspection by any witness who made it. Upon this branch of the case the learned trial judge charged the jury:

"I do not say it was the city's duty to withdraw that water, because that was the only water they had there, but to reveal the danger to these men, so that they might govern themselves accordingly, and make such close examination of these boilers—closer than would be necessary in an ordinary case —as was necessary to show that the dangerous point had not been reached. If the city failed in that point negligently, then you would be able to find against the city, providing the two deceased men were themselves not negligent, within the definition that I have heretofore given you."

This instruction was evidently acceptable to counsel for the defendant, who took no exception to it, nor, indeed, to any portion of the charge as the case finally went to the jury. At all events, it was correct; and the jury, guided thereby, doubtless reached the conclusion, amply warranted by the evidence as a whole, that the city was negligent in failing to exercise any reasonable precaution to protect the plaintiffs' intestates against the danger arising from the use of the water in question.

The doctrine of assumption of risk has no application to a case where the injured person is not shown and cannot be presumed to have possessed the knowledge necessary to enable him to detect or realize the danger.

I think that these cases were correctly tried and correctly decided. It follows that we should not interfere with the results reached in the trial court.

Judgment and order in each case affirmed, with costs. All concur.