ANNIE POTTER *vs.* RICHARDSON AND ROBBINS COMPANY, a corporation of the State of Delaware.

1. MASTER AND SERVANT—NEGLIGENCE—EVIDENCE—RES IPSA LOQUITUR.

The negligence of the master cannot be presumed from the mere fact that the accident happened or that the injury was sustained in his service, but it is incumbent on the servant to show that the injury was caused by the breach of some duty which the master owed him.

2. MASTER AND SERVANT—MASTER'S LIABILITY—CARE REQUIRED.

A master furnishing the carcasses of chickens in its canning factory to a servant employed in cleaning and cutting them was required to exercise reasonable and ordinary care; that is, such care as a reasonably prudent and careful person would have exercised under like circumstances to prevent injury or infection to the servant from their decayed condition. .

3. MASTER AND SERVANT—INJURY—LIABILITY.

A master is not liable for injury to his servant resulting from accident of such a character that reasonable men, proceeding with reasonable caution, would not ordinarily have foreseen and anticipated it, such as an injury happening under very exceptional circumstances, although proper precautionary measures would have prevented it.

4. MASTER AND SERVANT—MASTER'S LIABILITY—INSURER. .

While a master is liable to a servant for an injury resulting from his negligence, he is not an insurer of the servant's safety, and is not bound to guard and protect him against all possible danger.

5. MASTER AND SERVANT—MASTER'S LIABILITY—ASSUMPTION OF RISK.

A servant assumes the risks ordinarily incidental to his employment, and which are patent and known to him, and which he could know by the exercise of due care or which are as obvious to him as to the master.

6. MASTER AND SERVANT—MASTER'S LIABILITY—LATENT DANGER.

Even though the danger to a servant is latent and caused by a defect in something it was the master's primary duty to furnish, the master will not be liable unless the defect was unknown to the servant, and not discoverable by the exercise of due care.

7. MASTER AND SERVANT—INJURY TO SERVANT—MASTER'S LIABILITY— INSTRUCTIONS AND WARNING.

As to a servant employed in a canning factory to clean and prepare the carcasses of chickens for cooking, canning, potting, etc., by drawing the entrails and cutting up the carcasses in pieces, the master, in view of the simple nature of the work, was not bound to instruct the servant respecting her employment or to warn her of any injury that might happen by reason of infection of a scratch on her hand from any decayed carcasses, as such danger was not so reasonably and naturally connected with the work, or so capable of being anticipated and forseen as to require such instruction or warning.

8. MASTER AND SERVANT—MASTER'S LIABILITY—INSPECTION.

In such case the master, in view of the fact that an inspection of a large number of carcasses might not have disclosed the decayed condition of one, was not required to inspect them before furnishing them to the servant for cleaning and cutting.

9. MASTER AND SERVANT—MASTER'S LIABILITY—NEGLIGENCE.

That the carcasses of chickens furnished an employe in a canning factory to be cleaned and cut for canning, potting, etc., had been kept in cold storage before they were delivered to her, did not affect the master's liability in respect to furnishing decayed carcasses as a result of which an existing scratch on her hand was infected, or her own contributory negligence.

10. MASTER AND SERVANT—PERSONAL INJURIES—RECOVERY—CONTRIBUTORY NEGLIGENCE.

Even though a master is guilty of negligence, a servant, if he himself is guilty of negligence proximately contributing to his injury, cannot recover.

11. PLEADING—DEMURRER—CONTRIBUTORY NEGLIGENCE.

When contributory negligence appears on the face of the complaint, it may be taken advantage of by demurrer.

12. MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

A servant employed in a canning factory to clean and cut the carcasses of chickens furnished her for cooking, potting, etc., and who, if she found a decayed carcass, was required to report the fact to the master, but who instead cut up a decayed carcass and suffered an infection of an existing scratch on her hand, was guilty of contributory negligence defeating a recovery.

(*January* 26, 1915.)

PENNEWILL, C.. J., and HEISEL, J., sitting.
*Levin Irving Handy* and *Wilbur L. Adams* for plaintiff.
*Henry Ridgely* and *W. Watson Harrington* for defendant.
Superior Court, New Castle County, January Term, 1915.

ACTION ON THE CASE, No. 79, March Term, 1914.

Action by Annie Potter against Richardson and Robbins Company to recover damages for personal injuries alleged to have been occasioned by negligence of defendant company.  General demurrer to the three counts in the declaration.  Sustained.

The questions on the legal sufficiency of the declaration appear from the opinion of the court.

PENNEWILL, C. J., delivering the opinion of the court:

In this case the defendant has demurred generally to the three counts of plaintiff's declaration.

In the first count, it is alleged that the defendant is a corporation engaged in the business of canning poultry and other food stuffs, that plaintiff was employed in its factory at Dover to clean, and prepare the carcasses of chickens for canning, by drawing the entrails and cutting up the carcasses in pieces, that it was defendant's duty to furnish plaintiff with reasonably safe and sound carcasses of chickens to be cleaned and prepared by her, to be cooked and carved or packed or potted, yet that said defendant negligently and carelessly provided plaintiff with partially putrid, rotten, and decayed carcasses of chickens, that plaintiff had a scratch or cut in the middle finger of her left hand and became infected with blood poisoning by means of the poisonous substances which were in the carcasses of said chickens by reason of their partially putrid, rotten and decayed condition as aforesaid. In the second count there is an additional averment that the said carcasses of chickens had been before that time kept in cold storage, and under the circumstances it was defendant's duty to inspect or have inspection made of the said carcasses to discover whether they, or any of them, were putrid, rotten or decayed, or partially so.  The third count is like the first with the additional averment that the said carcasses had before that time been kept

in cold storage and that under the circumstances, defendant knew, or by the use of due care and diligence, could and should have known, that some of said carcasses of chickens were partially putrid, rotten and decayed, that plaintiff was ignorant of the unsanitary condition of said carcasses and of the danger in cleaning and preparing the same, and in consequence that it was the reasonable duty of the said defendant to the said plaintiff to warn her of the said partially putrid, rotten and decayed condition of said carcasses, and thereby, to warn her of the danger of the work of cleaning and preparing the same.

This statement of the plaintiff's cause of action as set out in the several counts of her narr. is sufficient for the purposes of the case now before the court.

The parts of each count material and pertinent to the questions raised by the demurrer may be more briefly stated as follows:

In the first count the breach of duty alleged is that the defendant company furnished plaintiff with partially putrid, rotten and decayed chickens to be cleaned and prepared by her for cooking and canning.

In the second count the allegation of breach of duty is the failure of defendant company to have a proper inspection made of the carcasses of the chickens after the same had been in cold storage.

In the third count the breach is averred to be the defendant's failure to warn the plaintiff of the condition of the carcasses, the same having been in cold storage, and of the danger of the work of cleaning and preparing them, she being ignorant of the same.

The first count is based upon the proposition that since the plaintiff was employed by the defendant to clean and prepare the carcasses to be cooked or potted by the defendant, it owed her the duty of furnishing and providing her with reasonably safe and sound carcasses of chickens to be cleaned and prepared. And since these chickens were to be prepared and to be put on the market for food for the public, the plaintiff had the right to rely upon the defendant to furnish her with only such carcasses as might be deemed fit for human food.

We think the plaintiff is here confusing the defendant's duty to an employee with the duty it owes its customers, the buyers of its goods, who can have no knowledge of the condition of the chickens before they are cooked and canned.  The defendant's duty to the plaintiff cannot be measured by the fitness of the chickens for food.  The carcasses were given to her only for the purpose of being prepared for cooking and canning.

This case presents but two questions of law, viz.:

1.  Did the defendant exercise due care in furnishing to the plaintiff carcasses of chickens to be cut up and prepared?

2.  Was the plaintiff guilty of negligence which proximately contributed to her injury?

We may say, the principles of law applicable to the questions raised by the demurrer are well settled by the decisions in this state, and there is no reason for the citation of authorities from other jurisdictions except for the differing language used by other courts.

[1]  It is a principle of law which will not be disputed, that the negligence of the master cannot be presumed from the mere fact that the accident happened, or the injury was sustained in the service of the master.  It is incumbent on the servant to show that the injury was caused by the breach of some duty which the master owed the servant.

[2, 3]  The question raised by the demurrer to each of the counts of the declaration are so similar and connected that they will be treated for the most part together, and not separately. We will say, however, in respect to the first count, that the care the defendant should have exercised in procuring and furnishing the carcasses for the plaintiff was reasonable and ordinary care, that is, such care as a reasonably prudent and careful person would have exercised in a like case, or under like circumstances. Such being the duty imposed upon the defendant, it cannot be held liable unless there was a failure to exercise such care.  Mr. Thompson in his *Commentaries on the Law of Negligence, Vol. 4*, § 3774, says:

"In applying this doctrine of reasonable care, it is well held that a master is not liable for injuries to his servant resulting from an accident of such a

character that reasonable men, proceeding with reasonable caution would not ordinarily have foreseen and anticipated it—such as an injury happening under very exceptional circumstances, although the proper precautionary measures, if taken, would have prevented it."

The general principles of law respecting the care to be exercised, and the duty to be performed, by the master for the protection of his servant are well settled in other states as well as our own. The following well-considered cases were cited by the defendant, viz.: *Cowhill v. Roberts*, 71 *Hun*, 127, 24 *N. Y. Supp.* 533; *Cotton v. Owensboro Wheel Co. (Ky.)* 97 *S. W.* 763; *Hobbs vs. Bowie & Terhune*, 121 *Ga.* 421, 49 *S. E.* 285; *Relyea v. Tomahawk Pulp & Paper Co.*, 110 *Wis.* 307, 85 *N. W.* 960; *Goure v. Storey*, 17 *Idaho*, 352, 105 *Pac.* 794; *Griffith v. N. J. & N. Y. R. R. Co.*, 5 *Misc. Rep.* 320, 25 *N. Y. Supp.* 812; *Karr Supply Co. v. Kroenig*, 167 *Ill.* 560, 47 *N. E.* 1051; *Wormell v. Maine Central R. R. Co.*, 79 *Me.* 397, 10 *Atl.* 49, 1 *Am. St. Rep.* 321; *Russell Creek Coal Co. v. Wells*, 96 *Va.* 416, 31 *S. E.* 614; *Pennsylvania Co. v. Lynch*, 90 *Ill.* 333; *Pittsburgh & Connellsville R. R. Co. v. Sentmeyer*, 92 *Pa.* 276, 37 *Am. Rep.* 684.

In the Supreme Court case of *Amer. Bridge Co. v. Valente*, 7 *Pennewill* 370, 73 *Atl.* 400, *Ann. Cas.* 1912D, 69, it was said:

"The duty of the master to give instructions to a servant is based upon the assumption that the master possesses some knowledge concerning the work and its dangers that the servant by reason of ignorance or inexperience does not possess. It is a general rule that a servant holds himself out as capble of doing the work he undertakes to do, and that he assumes the risks incident to the employment."

The court in the same case, quoting from *Labatt on Master and Servant*, § 463, says:

"So also, it is held, that no action is maintainable where the servant had, as compared with the master, an equal or better opportunity to see and know the extent of the danger. The law supposes every aduit person to possess such ordinary intelligence, judgment and discretion as will enable him to appreciate any obvious danger. The master, therefore, has the right to assume that an adult employee possesses that knowledge which is acquired by common experience, that he knows everything which is a matter of common knowledge, or presumed to be within the common experience of all men of common education. That he understands those dangers which are the subject of common knowledge or which can be readily seen by common observation."

See also *Punkowski v. Leather Co.*, 4 *Pennewill*, 544, 57 *Atl.* 559, *Boyd v. Blumenthal Co.*, 3 *Pennewill*, 564, 52 *Atl.* 330; *Creswell v. W. & N. R. R. Co.*, 2 *Pennewill*, 210, 43 *Atl.* 629.

Under the facts set out in the plaintiff's declaration, and which we must now assume to be true, was the employment in which the plaintiff was engaged a dangerous employment, and one which the defendant knew or should have known to be dangerous?

[4-6] It should be remembered that while the master is liable to the servant for an injury resulting from the master's negligence, he is not an insurer of the servant's safety, neither is he bound to guard and protect him against all possible danger. The reason is, as we have seen, that the servant assumes the risks that are ordinarily incidental to his employment, and which are patent and known to him, which he could know by the exercise of due care, or which were as obvious to the servant as to the master. Even though the danger is latent, and caused by a defect in something it was the primary duty of the master to furnish, he would not be liable unless the defect or danger was unknown to the servant and not discoverable by the exercise of due care. *Creswell v. W. & N. R. R. Co., supra.* \

It is well known that there is some danger incident to every employment, and it would be unreasonable and unfair to hold the master liable for injuries that the servant by the exercise of proper care might have avoided, that the master could not reasonably anticipate or forsee, or that could have been apprehended by the servant as well as by the master.

[7, 8] What was the character of the plaintiff's employment?

To draw and cut up poultry preparatory for cooking. Surely a most common and simple work, and presumably as safe an employment as one could engage in. It was the same kind of work that is done almost every day in hotels, restaurants and private families. It would be most novel and startling for this court to announce the doctrine that the head of every household is liable in damages to any servant therein who is injured by reason of the decayed condition of the meat she was preparing to cook. It is possible a servant might be so injured, but is the danger so reasonably and naturally connected with the work, or so capable of

being anticipated and foreseen, as to make it the duty of the employer to instruct or warn the servant of the danger? We think not.

In this connection we will quote briefly from the old, leading and authoritative case of *Priestly v. Fowler, 3 Mees. & Wels.* 1, 6 and 7:

"In that sort of employment especially which is described in the declaration in this case, the plaintiff must have known as well as the master, and probably better, whether the van was sufficient, whether it was overloaded, and whether it was sufficient to carry him safely. In fact, to allow this sort of action to prevail would be an encouragement to the servant to omit that diligence and caution which he is in duty bound to exercise on the behalf of the master."

In *Pittsburgh & Connellsville R. R. Co. v. Sentmeyer, 92 Pa.* 276, 37 *Am. Rep.* 684, the court used this language in speaking of the duty of the master:

"But what is the logical result of a doctrine such as this? Is it not, that the company must not only guard its servants from probable, but also from possible dangers, and that it must place no dependence on their care and skill even in the matter of their own preservation and personal safety?"

Not only was there nothing in the nature of the plaintiff's employment that required any instruction or warning of danger to the plaintiff, but we are clearly of the opinion that the plaintiff's means and opportunities of discovering the danger complained of were even greater than those of the defendant. The defendant might have assumed that the carcasses furnished the plaintiff were not putrid, rotten and decayed but fit for food; and even though an inspection was made by the defendant of a large number of carcasses, the decayed condition of one or more might have escaped attention. But the defendant handled the particular carcass or carcasses from which she claims to have become infected, and which she alleges were so decayed as to be putrid and rotten. We must assume that the plaintiff was in the possession of her senses of sight and smell, and was a person of ordinary intelligence. It is inconceivable, therefore, that she did not observe and know the condition of the carcasses she handled. Indeed, she must have known else she would not have made the averments she has made in her declaration.

It is more than possible that the decayed condition of the carcasses might not have been known at all until cut open by the plaintiff, in which case she was the first person who could have obtained the knowledge that they were decayed.

There is an unusual fact in this case that may have some significance in considering whether the defendant should have warned the plaintiff of danger.   It appears that the injury complained of was caused by the alleged rotten and putrid meat coming in contact with a finger of the plaintiff upon which there was a scratch.

The necessary inference is that the injury would not have happened if the plaintiff's hand had been in a sound and normal condition.   It does not appear from the *narr.* that the defendant knew of the scratch on the plaintiff's finger, and danger from that cause could not have been foreseen by anyone but the plaintiff herself.

After a most careful consideration of all the facts disclosed by the declaration, the court are unable to see that there was any duty imposed by law upon the defendant to instruct the plaintiff respecting her employment or warn her of any danger that might happen therefrom.   Neither do we think the defendant failed to perform any duty the law imposed upon him respecting the inspection of the carcasses delivered to the plaintiff.

It would require much space and unduly extend this opinion if we should undertake to review, at lenth the cases cited by the plaintiff upon the questions above considered.

We think those cases are not in point, and that all of them could be covered by this one general remark: They are cases in which there was latent danger which the defendant had knowledge of, or could have had; and which the plaintiff did not know and could not reasonably be expected to know.   Of course defendant in such cases should have instructed and warned the servant, but the facts and conditions in the present case are entirely different, as clearly appears from the plaintiff's declaration.

The cases cited by the plaintiff are the following: *Texas, etc., R. Co. v. Gardner,* 29 *Tex. Civ. App.* 90, 69 *S. W.* 217; *Dunn v.*

*Connell*, 21 *Misc. Rep.* 295, 47 *N. Y. Supp.* 185; *Nickel v. Columbia Paper Stock Co.*, 95 *Mo. App.* 226, 68 *S. W.* 955; *Nelson v. N. Y. City*, 101 *App. Div.* 18, 91 *N. Y. Supp.* 763; *Wagner v. Co.*, 147 *Pa.* 475, 23 *Atl.* 772, 30 *Am. St. Rep.* 745; *Cox v. Company*, 24 *R. I.* 503, 53 *Atl.* 871, 60 *L. R. A.* 629.

In the first case the servant was required to immerse pieces of machinery in a vat containing lye and caustic soda kept at a high temperature, and to clean the machinery with a steam jet on their removal, during which operation particles of dirt, grit, etc., adhering to the machinery were sometimes blown back into his face.

In the second case the plaintiff was employed to remove an obstruction from the waste pipe in the toilet room of defendant's saloon. In doing so his hand and arm were severely burned by a solution of potash which had been thrown into the pipe without the plaintiff's knowledge. The court said:

"If we assume that the defendant did not know of the potash in the pipe, still his negligence was apparent from sufficient evidence. Examined as a witness in his own behalf, the defendant denied all knowledge of the presence of the potash; and it is elementary that the master owes his employee a duty to exercise ordinary care in the selection of a place to be assigned for the performance of services which is free from the risk of injury not obvious or ordinarily incidental to the particular work to be performed."

This case would seem to be an authority in favor of the defendant in the present case.

The third case cited is one upon which the plaintiff particularly relies, and we will endeavor to show how greatly it differs from the one before the court. The plaintiff was employed in defendant's paper mill in assorting rags and old paper. The rags and paper were brought in in large sacks and emptied on the assorting tables. A sack containing old paper gathered from some hospital, dumped on the table where plaintiff worked, contained pieces of cotton saturated with blood and various medicines and also pieces of decayed human flesh. It would be difficult to find a more extreme case of negligence on the part of the master. It was gross negligence to furnish such materials, or not to have inspected them, but having furnished them it was clearly the duty of the defendant to warn the plaintiff of the danger. It was

properly held that the plaintiff had a right to rely upon the defendant taking reasonable precaution to prevent the putting of infectious rags on her table for assorting. Clearly there could be no assumption of risk by the servant in such a case. The court said:

"The extraordinary character of the occurrence is enough to demonstrate that plaintiff should not be held to have assumed the risk of its happening."

In the fourth case the employer had furnished the servant, for use in a boiler, water so highly impregnated with chlorine as to give rise to a rapid corrosion and consequent weakening of the boiler, not produced by water ordinarily employed for boiler purposes. It was held to be negligence on the part of the defendant not to have had the boiler inspected. He had not exercised ordinary care. The servant did not and could not know of the danger.

In the fifth case the injuries were sustained by inhaling fumes of nitric acid. The employment was manifestly a dangerous one, which the defendant knew, and it was his duty to warn the servant of the danger.

The last case cited is in principle like the others. The condition of the drain pipe, which caused the injury resulted from the defendant's negligence. It was maintained by the defendant in a foul and dangerous condition.

In practically all of the plaintiff's cases the servant must have had much experience in the business or considerable knowledge of the conditions existing and materials employed to have appreciated the risk and danger incident to his employment. The difference between those cases and the present one is too obvious to require further comment.

[9] The court are unable to see that the mere fact that the carcasses had been kept in cold storage before they were delivered to the plaintiff makes any difference in the application of the principles above stated, or affects in any wise the conclusion we have reached. That fact added nothing to the care required to be exercised by the plaintiff in respect to the carcasses, because we cannot assume it made them more dangerous.

It is a fact of common knowledge that a large part of human food is now kept in cold storage, but the court cannot say that because of such fact it is likely to be putrid, rotten and dangerous, and should therefore be inspected or examined with greater care than would be required if it had not been in cold storage.  But even if it was more dangerous, the plaintiff had as good, and even better opportunities than the defendant to know whether the carcasses handed to her were putrid, rotten and decayed   We have already commented sufficiently upon the rule of law, that the master is not liable where the servant had equal or better opportunity of discovering the danger.

The plaintiff makes the point, that while she may have had equal opportunity with the defendant to know the decayed condition of the carcasses, she did not know of the danger in handling them in such condition, and the defendant having failed to warn her is, therefore, liable.  This contention is necessarily based upon two assumptions—first, that the defendant had greater knowledge in this regard than the plaintiff; and second, that it was reasonable for the defendant to forsee or anticipate that the carcasses would be in a dangerous condition to handle.  The first assumption could not be maintained independent of the second, and we have already held that the second could not be sustained.

[10]   The defendant contends that the plaintiff's declaration is also bad because it shows that the plaintiff was herself guilty of negligence that contributed to her injury.  It is needless to cite authorities in this state to support the proposition, that even though the defendant was guilty of some negligence yet if the plaintiff was also guilty of negligence that proximately contributed to his injury he cannot recover.

[11]   It is not disputed that when contributory negligence appears on the face of the complaint it may be taken advantage of by demurrer.  *Goure v. Storey*, 17 *Idaho*, 352, 105 *Pac.* 794.

[12]   From the facts stated in the declaration does such negligence on the part of the plaintiff appear?   The plaintiff was employed to cut up and prepare chickens to be cooked and canned or potted.   She was not employed to cut up and prepare putrid, rotten and decayed chickens.   If she found a carcass in such con-

dition it was her duty to report the fact to her employer, the defendant. Instead of doing that she went on and cut up the carcass and her injury resulted therefrom. She was, in the opinion of the court, guilty of contributory negligence.

In the case of *Seininski v. Wilmington Leather Co.*, 3 *Boyce*, 288, 83 *Atl.* 20, the court said:

"If a servant in the course of his employment becomes aware of threatened danger, which by the exercise of reasonable care he could avoid, but fails to do so and is thereby injured, he must abide the result of his own negligence."

In *R. R. Co. v. Barber*, 5 *Ohio St.* 541, 564, 565, 67 *Am. Dec.* 312, it was held, that if the servant knew of the defects and insufficiency of the cars and machinery furnished for his employment, it was his duty to inform the company, and take the proper precautions to guard against danger therefrom; and if, without taking the necessary and proper precaution to guard against danger, he continues to use them he takes upon himself the risk, and waives his right as against the company. See also *Kaare v. Troy Steel & Iron Co.*, 139 *N. Y.* 369, 34 *N. E.* 901; *Pennsylvania Co. v. Lynch*, 90 *Ill.* 333.

After carefully considering this case, the court are of the opinion that there is no substantial ground on which the jury would be justified in finding negligence on the part of the defendant; and also, that negligence on the part of the plaintiff proximately contributing to her injury, appears from her declaration.

The demurrer is therefore sustained as to all the counts.