Nickel v. Columbia Paper Stock Co.

## ANNA NICKEL, Respondent, v. COLUMBIA PAPER STOCK COMPANY, Appellant.

### Kansas City Court of Appeals, June 2, 1902.

1. **Master and Servant: ASSUMPTION OF RISK: PAPER-AS-SORTER: INFECTED MATERIAL.** A servant assumes ordinary risk which naturally follows the employment, and an assorter of paper assumes the ordinary risk of disease naturally resulting from the employment, but not the risk arising from assorting poisonous waste paper and matter gathered from places where it may reasonably be expected to be infected, as, for example, a hospital.

2. ———: ———: **NEGLIGENCE: LIABILITY: WARNING.** A paper manufacturer is liable for diseases arising from infected matter given to a paper-assorter in his employ to be assorted, whether the poisonous matter is gathered by his agents for whose acts he is responsible or even if collected without his knowledge, in which event he should inspect, and if the injury was likely to unavoidably follow, then he should warn of the danger or protect against it. (Cases considered.)

3. ———: **DANGER OF BUSINESS: INSPECTION: JURY QUES-TION.** Where the danger of disease or other injuries are reasonably likely to follow from the business, it is at least proper to submit the question whether prudence would not have suggested inspection to the master. (Cases considered.)

4. ———: **PAPER-ASSORTER: INSPECTION: MASTER'S DUTY.** An assorter of paper in a paper factory is not an inspector of what material should be properly turned over for assortment; and an instruction that if the master did not know what was in the sack of paper and matter turned over for assortment, and the servant knew that the master did not know, he should assume that it was injurious, is properly refused.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates*, Judge.

AFFIRMED.

*Harkless, O'Grady & Crysler* for defendant.

(1)   Under the evidence, the plaintiff was not entitled to recover and the cause should be reversed. Wray v. Electric Light Co., 68 Mo. App. 380; Lawless v. Laclede, 72 Mo. App. 679; Deisenwieter v. Malting Co., 72 N. W. 735; Corcoran v. Wanamaker. 39 Atl. 1108; O'Keefe v. National Box Co., 33 Atl. 587. (2)   The first instruction given for the plaintiff and modified by the court, concludes by telling the jury to find for the plaintiff upon the facts alone stated in that one instruction, and wholly ignores the defense of assumption of risk and contributory negligence, and for that reason is bad, and the other instructions in the case do not cure this positive error.   Carder v. Primm, 60 Mo. App. 423; Linn v. Massillon, 78 Mo. App. 111; Orscheln v. Scott, 79 Mo. App. 534; Desnoyer v. Lisman, 85 Mo. App. 340.   (3)   Instruction number one is also erroneous for the reason that it assumes the existence of disputed facts.   Linn v. Massillon, 78 Mo. App. 111; Carder v. Primm, 60 Mo. App. 423. (4)   Instruction number ten, offered by defendant, should have been given, which declared in effect that if the defendant did not know of anything improper in the material in the sacks and the plaintiff knew that the defendant did not know it, then she could not recover.   Bailey Master and Servant, p. 180, ch. 9; Epperson v. Postal Tel. Co., 155 Mo. 375.

*Elliott & Burnham* for respondent.

(1)   Even though the injury complained of was unusual and could not ordinarily have been foreseen, yet it is clearly shown that the injurious consequences to the plaintiff flow directly and immediately from the negligent act of the defendant, in permitting the poisonous material to be given plaintiff to be sorted, when defendant could, by the most ordinary care of inspection of the bale, or of the source from whence

it came, have prevented such material from being given plaintiff to work upon, hence, appellant can not be excused. Hoepper v. Southern Hotel Co., 142 Mo. 389; Grany v. Railroad, 140 Mo. 98; 16 Am. and Eng. Enc. of Law, 432, and many cases there cited. (2) While the rule requiring the master to provide a reasonably safe place for the servant in prosecuting the work in the line of the servant's employment, is not always applicable where the work and the place of work are coincident, or where the work involves the place of working, as in the case at bar, yet such rule does apply as to latent dangers. This injury to respondent by the latent danger of the poison in the material which appellant could have avoided by ordinary care and foresight, surely comes within this rule. Curley v. Hoff, 62 N. J. L. 758; Dyer v. Brown, 64 App. Div. Sp. Ct. N. Y. 89; Kiras v. Nichols Chemical Co., 59 App. Div. Sp. 79; Dunn v. Connell (N. Y.), 21 Misc. 295; 2 Bailey's Per. Inj. Rel. to Master and Servant, secs. 511, 757, 758, 2628; Nevin v. Sears, 155 Mass. 303; Wood's Master and Servant (2 Ed.), p. 675; Whittaker's Smith on Negligence, p. 130; I Shearman & Redfield on Negligence, (4 Ed.), sec. 194. (3) There should be kept in view the fact that though the work in this case involved the place of working, yet the peril encountered by respondent grew out of an extrinsic cause, and did not arise from the work itself, or from any negligence of respondent in doing the work. The house-building illustration in Armour v. Hahn, 111 U. S. 318, cited on page 302, Bradley v. Railway, 138 Mo., makes this distinction clear. (4) It is not the duty of servant to look out for latent defects, whereas, it is the duty of the master to see that his appliances are kept in good order and condition. Nichols v. Crystal Glass Co., 126 Mo. 55; Epperson v. Postal T. & C. Co., 155 Mo. 385. (5) Servant has the right to assume that the

material furnished by the master to work upon is safe. 14 Am. and Eng. Enc. of Law, 855; Speed v. Railroad, 71 Mo. 303; Keegan v. Kavanaugh, 62 Mo. 232; *Res ipsa dixit*—Fuchs v. St. Louis, 133 Mo. 180, and citations

*T. B. Buckner* and *Bremmerman & Wherry* for respondent.

Filed argument.

ELLISON, J.—This action is for personal injury alleged to have resulted to plaintiff from the negligence of defendant. The judgment in the trial court was for plaintiff.

The defendant was engaged in the business of manufacturing paper. In prosecuting its business it had a branch house in Kansas City, Missouri, where it bought, collected, cleaned, baled and shipped old waste paper and rags to be manufactured into new paper. The general mode of carrying on the business in Kansas City was, that defendant furnished sacks to various business institutions in Kansas City where large quantities of waste paper accumulated. These were gathered at intervals by defendant's wagons. Various persons in the city would likewise bring sacks or bundles of paper and rags to defendant's place of business and sell them to defendant. The paper was received by defendant on the ground floor of its building and then carried to an upper floor where it was sorted and thrown into different receptacles provided. The sorting consisted, principally, in separating the kinds of paper thus brought in, fit for the manufacture of different kinds of new paper and of separating such material as might not be fit for manufacture at all.

Plaintiff was engaged on the upper floor with several other women in doing this work. While so engaged there was brought to her from the lower floor,

by the men in defendant's employ for that purpose, and dumped upon the table where plaintiff worked, a sack of old paper which had been gathered from some hospital. It contained pieces of cotton saturated with blood and with urine and various medicines. There were also pieces of decaying human flesh emitting an unbearable odor. These substances so poisoned plaintiff that she became violently sick and suffered the injury for which she instituted this action. The defendant's theory is that conceding the foregoing, which (omitting unnecessary detail), are the facts as the evidence in plaintiff's behalf tended to show them, she has no case. That plaintiff's business, in which she voluntarily engaged, was to meet with such dangerous conditions as just described. That her employment was to inspect the paper and that no right of action could accrue to her for an injury resulting from the ordinary prosecution of the thing she was hired to do. That she assumed the risk of such injurious consequences as happened to her.

The plaintiff's theory is that defendant was guilty of negligence, either in gathering such poisonous material, or, in not having it inspected before carrying it to plaintiff's table for sorting. That consequently she did not assume the risk of the act described.

The plaintiff did undoubtedly assume the ordinary risk of injury which would naturally or reasonably follow the character of employment in which she was engaged. Her work was not a cleanly work, nor was it free from the general risk of disease; a risk which the defendant, as her employer, could not reasonably wholly provide against. For, with diligent circumspection on the part of defendant, there would still be risk of disease in such work. But these facts do not exculpate defendant from an affirmative act in putting upon plaintiff's work table a bundle of poisonous waste matter gathered from a place where such waste matter might reasonably be expected to be

found. If defendant had gathered waste material from a smallpox pesthouse and placed on plaintiff's table, whereby she became diseased, could it be said that she assumed the risk of such conduct? The extraordinary character of the occurrence is enough to demonstrate that plaintiff should not be held to have assumed the risk of its happening. Schroeder v. Railway, 108 Mo. 322, 329; Henry v. Railway, 109 Mo. 488.

We can not see how defendant can construct any reasonable theory of escape from the wrong done the plaintiff. If the foul and poisonous material was collected by agents for whose acts it is responsible, then it should answer to plaintiff for the consequences. And if the material was collected without plaintiff's knowledge, or authority, then the jury has found that common prudence would have dictated an inspection thereof before handing it over to plaintiff for sorting. And if the business was such that such an injury as happened to plaintiff was likely to unavoidably follow, then it was defendant's duty to have warned the plaintiff of the danger, or to have taken precautions against such consequences. Hysell v. Swift Packing Co., 78 Mo. App. 39; Mather v. Rillston, 156 U. S. 391; Smith v. Car Works, 60 Mich. 501; Smith v. Iron Works, 42 N. J. L. 467; Fox v. Peninsular Works, 84 Mich. 676.

The Hysell case is cited by defendant as supporting its theory of defense, but it evidently does not do so. On the contrary, the rule there discussed, while freeing the defendant from liability in that case, establishes a liability in this case. There the harmful results from bacteria getting into the plaintiff's eye in the manner they did, was so uncommon and so wholly beyond the range of precaution that we held an employer not liable for an injury resulting therefrom. The difference between the two cases is apparent. In that case the cause and resulting effect was, perhaps, without precedent. The injurious consequences or

danger from the work done in that case was too remote
to demand precaution on the part of the employer.
Much the same may be said of Lawless v. Gas Light
Co., 72 Mo. App. 679. In this case the danger of
disease and other injuries, from the business in which
defendant was engaged, was so reasonably likely to
follow that it was at least properly asked of the jury
whether prudence and care would not have suggested
inspection of the material before turning it over to
employees for sorting. Curley v. Hoff, 62 N. J. L.
758; Nevin v. Sears, 155 Mass. 303. In the first of
these cases it is said, that the master can not be ex-
pected to guard the servant against the very danger
which the work he does necessarily involves, yet it is
his duty in such circumstance to warn him of any
latent danger attending it. The other case was where
the master furnished blocks of rock to a stonemason
who trimmed them into proper size for use in the wall.
In blasting the blocks of rock from the quarry, dyna-
mite cartridges were inserted in holes drilled into the
rock and exploded by electricity. By some means a
cartridge was left in a block of rock unexploded and
was so turned over to the mason. When he began
to fashion it into shape for the wall it exploded and
injured him. It was held proper to submit the case
to the jury on the question whether the master, in due
care, and in view of his duty to furnish safe material
to work upon, should have inspected the rock before
turning it over to the mason.

But on the subject of inspection, defendant says
that plaintiff was herself an inspector, and, as before
stated, can not recover for injury resulting from the
very thing she was hired to do. She was, however,
not an inspector of what was proper material to be
given over to defendant's employees for assortment.
Her duties began after that stage of the work had been
performed by others.

Complaint is made that the court gave plaintiff's

first instruction when it omitted reference to the issue whether plaintiff assumed the risk of injury. The instructions read together put that defense so plainly to the jury that they could not have been misled. Owens v. Railway, 95 Mo. 181; Meadows v. Ins. Co., 129 Mo. 97; Anderson v. Railway, 161 Mo. 427.

The defendant has no ground of complaint of the court's action on other instructions. Some of those given for defendant are exceedingly liberal and favorable to it. Instruction No. 10 was properly refused. It, in effect, informed the jury that if defendant did not actually know what was in the sack and plaintiff knew defendant did not know, she should assume it was something which would injure her, and consequently was to be peremptorily refused a verdict. The instructions as a whole presented the case with the utmost fairness and liberality towards defendant.

We are satisfied that no ground exists which would justify our interference, and the judgment is affirmed. All concur.