THE NATIONAL STAMPING AND ELECTRIC WORKS, Appellant, v. W. N. WICKS et al., Respondents.

**Springfield Court of Appeals, May 2, 1910.**

1. **PLEADING: Practice: Reply: Trial on Theory That Reply Had Been Filed.** In a case where no reply was filed to the counterclaims set up in the answer, but the case was tried on the theory that a general denial had been filed to such new matter, it is too late after the trial for plaintiff to take advantage of the failure to file a reply.

2. **CONTRACTS: Damages: Failure to Furnish Machinery as Ordered.** The rule is that where machinery or other article is furnished to the buyer under a contract and is retained by him, although such machinery does not comply with the contract requirements, yet if it is of value to him, he will be liable for such value, less any damages resulting from the seller's breach of contract.

3. ———: ———: ———: **Sufficiency of Evidence.** In a counterclaim for damages for failure to furnish electrical machinery according to contract, the evidence is examined and held sufficient to justify sending the case to the jury.

4. **INSTRUCTIONS: Duty to Request.** Section 748, Revised Statutes 1899, provides that either party may move the court to give instructions on a point of law arising in the case, but the trial court is not required to instruct in civil cases unless requested so to do. Mere non-direction is not misdirection, so appellant is in no position to complain that the trial court failed to instruct on each item of respondent's counterclaims, when he had failed to request any instructions thereon.

5. **PRACTICE: New Trial: Surprise: False Testimony.** The plea of surprise, coming after trial, is generally regarded by courts as a natural appendix to a lost cause. A party litigant cannot be surprised, in the legal meaning of the word, because his adversary introduces evidence in support of issues made by the pleading, even though such testimony is false.

6. ——: ——: Newly Discovered Evidence. A new trial will not be granted on newly discovered evidence which is merely cumulative.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

AFFIRMED.

*W. P. Campbell* for appellant.

(1)    Defendants' right of recovery must be confined to the facts alleged and proved, as constituting the cause of action.   They cannot allege a state of facts and, on failure of proof, recover on another and different state of facts not pleaded.   Link v. Vaughn, 17 Mo. 385; Enterprise Soap Works v. Sayers, 51 Mo. App. 310; Marcum v. Smith, 56 Mo. App. 460; Thompson v. Railroad, 135 Mo. 217; Waldhier v. Railroad, 71 Mo. 514; Price v. Railroad, 72 Mo. 414; Bullene v. Smith, 73 Mo. 151; Mason v. Railroad, 75 Mo. App. 1; Chitty v. Railroad, 148 Mo. 64; Beck v. Ferara, 19 Mo. 30; Knoop v. Kelsey, 103 Mo. 291; Davis v. Bond, 75 Mo. App. 32; Robinson v. Rice, 20 Mo. 229; Clark v. Clark, 59 Mo. App. 332; Wesby v. Bowers, 58 Mo. App. 419; Glass v. Gilmore, 80 Mo. 297.

(2)    It became the duty of defendants to notify plaintiff within a reasonable time after the discovery of the breach of guaranty, if there was one, and of their ground of complaint; and their failure to do so for several months and until about to be sued on plaintiff's account for other goods sold and delivered in the meantime is a waiver of objections to the quality of the machine, if defendants ever had any cause for complaint. Stevens v. McKay, 40 Mo. 224; Graff v. Foster, 67 Mo. 512; Crawford v. Elliott, 78 Mo. 497; Blackriver Lbr. Co. v. Warner, 93 Mo. 374; Tufts v. Morris, 87 Mo. App. 98; Fairbanks v. Lissa, 36 Mo. App. 711; Callahan v. Morse, 37 Mo. App. 189; Water Co. v. Aurora, 129 Mo. 540; Water & L. Co. v. Lamar, 140 Mo. 157: Kingman v. Schulenberger, 64 Mo. App. 548.

*N. B. Wilkinson* for respondents.

In order that defendants may recover the difference between the value of the machine they bought, and the one sent them by the plaintiff, it is not necessary that they should first offer to return it. They can keep it and claim the counterclaim for the difference between the values of the machines. Brown v. Weldon, 99 Mo. 564; Fritsch Fdy. Co. v. Mfg. Co., 100 Mo. App. 414; Monsur v. Botts, 80 Mo. 651; Squire v. Brewing Co., 90 Mo. App. 462; Hueber Mfg. Co. v. Hunter, 99 Mo. App. 46.

NIXON, P. J.—This is a controversy over the purchase price of certain electrical machinery purchased for use in respondents' electric light plant at Willow Springs. The correspondence leading up to the purchase commenced February 22, 1905, when the respondents wrote the appellant the following letter:

"We are in the market for a 25 k. w. alternator 1100 v., 60 cycle, about 1200 r. p. m., with exciter and switchboard instruments complete. Please give best prices at once, and oblige, Wicks & Peters, Per Howard."

On March 1, 1905, appellant replied as follows:

"We are in receipt of your letter of the 22d and we are pleased to quote you as follows: One 25 k. w., 60 cycle, 100 General Electric reconstructed alternator, with toothed armature, speed approximately 900 r. p. m., $400. f. o. b. Chicago, including exciter. This machine has a new toothed armature, self oiling, and is a ten pole machine, and has been thoroughly overhauled and tested by us and is guaranteed to be in first-class condition. We can furnish you with a 230 k. w., 150 cycle, 1100 volt Thompson-Houston alternator, speed 1500 r. p. m., with exciter for $225. f. o. b. Chicago."

The purchase of the 30 k. w., 60 cycle, General Electric alternator was made by respondents' letter to appellant of March 7, 1905, as follows:

"Replying to your favor of March 1, will say that the 25 k. w., 60 cycle, General Electric alternator would just about fill our needs. But we think the switch-board only 25x30 will be too small. We will want on the board 1 volt meter, 1 ammeter, 2 lightning arresters, 1 switch-board transformer, 1 main line switch, exciter switch, 1 rheostat, 2 pilot lights, 1 circuit breaker, and 1 ground detector. Please quote us on the entire outfit with marble panel long enough to receive all these instruments."

The whole bill purchased was finally concluded by letter of respondents to appellant of March 12, 1905, as follows:

"Replying to your favor of March 10 and also of March 1 will say that we accept your offer on the 25 k. w., 60 cycle, General Electric dynamo to include exciter at $400; also switch-board and instrument as per yours of March 10 at $97, total, $400, f. o. b. cars Chicago. We do not want this shipped before April 15th, but will send you a deposit of the amount you may require to hold the trade."

The respondents paid the entire amount of the purchase price in cash prior to the institution of the suit except the amount of sixty dollars, and at the December term, 1905, appellant commenced suit against the respondents stating as its cause of action that the respondents were indebted to it for electrical appliances and apparatus sold and delivered by the appellant to the respondents on or about the 14th day of July, 1905, to the amount of sixty dollars, and for which with interest appellant demanded judgment. The account filed with the petition was for ten twelve-light transformers at six dollars each.

Respondents filed an answer admitting the purchase of the ten twelve-light transformers, but also filed a counterclaim as follows:

"Defendants for a further cause of action and as a counterclaim allege that they purchased from plain-

tiff in the year 1905 a complete electric light plant for use in the city of Willow Springs, Missouri, and that plaintiff in accordance with such purchase, shipped to defendants at Willow Springs, Missouri, a second-hand electric light plant which had been worked over, and changed, and which was guaranteed a twenty-five kilowatt, sixty cycle, eleven hundred volt machine in first-class working order. That defendants did not know anything about such outfit and could in no way determine its cycle power or voltage until it was set up and put in operation. That after such machine was put in operation it was discovered to be a machine of some other cycle power than a sixty cycle machine, and that the original stamp or plate mark of such machine had been removed and another plate marking put on it by the plaintiff or some one for them, and that the machine sent them by plaintiff was not the electrical machine or outfit which defendants had purchased of plaintiff but was a very much inferior outfit and of no value. And that by reason of this deception and fraud, and by reason of plaintiff sending this inferior and mismarked electric machine to defendants and failing to send the machine defendants had purchased, they had been damaged in the sum of five hundred dollars, for which they ask judgment.

"For a further and separate counterclaim, defendants allege that when they purchased the electric lighting plant of plaintiff they also purchased as a necessary and essential part of such electrical plant at a stipulated gross price for the complete electrical outfit, a circuit breaker; but that for some reason plaintiff failed, neglected and refused to furnish and ship to defendants such circuit breaker, and that by reason of such neglect and failure on the part of the plaintiff to furnish a circuit breaker to defendants, they were damaged in the sum of thirty dollars, for which they ask judgment.

"For a further counterclaim against the plaintiff, defendants say that plaintiff furnished with the electric

lighting plant which they sold defendants as a necessary
and essential part of such electric lighting plant, one
ammeter and one volt meter, but that such ammeter and
volt meter so furnished and sent to defendants as a part
of such electric lighting plant were not built and made
to be used with the electric lighting plant which was
furnished defendants and would not correctly measure
the electric current of the plant, and that when placed,
in connection with such electric plant, the volt meter
incorrectly measured the voltage, and by reason of such
false registration and by such defective volt meters, two
transformers were burned out and destroyed and all
other transformers of such plant were found to be use-
less, and that five hundred incandescent lamps of the
value of eighty dollars were burned out and destroyed.
That defendants had no way of knowing that such volt
meter and ammeter were not built to register the power
of such plant until after they were used and were found
to be defective, and such damage had been done to such
plant.    Wherefore defendants asked judgment against
plaintiff for the sum of eighty dollars."

Judgment was for four hundred dollars for respond-
ents on their counterclaim, with a credit to appellant
of sixty dollars for the account sued upon, leaving a
balance of three hundred and forty dollars. Afterwards
respondents entered a remittitur of eighty dollars and
the judgment was amended to correspond and was en-
tered for two hundred and sixty dollars. The plaintiff
has appealed.

In plaintiff's motion for new trial, there are thir-
teen grounds of error assigned.    The assignments
number 7 inclusive to number 11 inclusive are for the
improper admission and exclusion of testimony.   On a
careful examination we find that no error was commit-
ted by the trial court in the admission or exclusion of
evidence.

There are also two assignments in the motion for
new trial which charge that the verdict is contrary to

the evidence and is not supported by sufficient evidence. These assignments are overruled for reasons hereinafter stated.

Appellant complains that the trial court committed error in the giving of instructions.

The statement of the counterclaim shows that the respondents' right of action was that they purchased of the appellant a twenty-five k. w., sixty cycle, General Electric alternator, and the issue at the trial was whether the respondents ordered and received such a machine as they purchased, or another machine known as the Thompson-Houston, which, respondents claim they did not order and that it was a cheaper machine.

It will be seen, as stated, that in their answer, the respondents set up a counterclaim. Section 607, Revised Statutes 1899, makes provision as to replying to such an answer in these words: ". . . and where the answer contains new matter, the plaintiff shall reply to such new matter within such time as the court by rule or otherwise shall require, denying generally or specifically the allegations controverted by him, . . . and he may allege . . . any new matter not inconsistent with the petition, constituting a defense to the new matter in the answer."

In this case no reply was filed as provided by this section of the statutes. But the case having been tried on the theory that a general denial had been filed to such new matter, after trial and verdict, it is too late for respondents to take advantage of the omission. Under this state of the pleadings, the issues raised at the trial were, whether the respondents had ordered and purchased the General Electric alternator or whether they had ordered and received the Thompson-Houston machine, and if the latter, what was the damage to them, if any.

The respondents at the trial, among other evidence, offered that of W. A. Howard, who testified that respondents purchased of appellant one General Electric

machine and that the appellant, instead of sending such machine, in fact delivered a machine known as the Thompson-Houston, an entirely different machine from the General Electric. He stated that he was the active agent of the respondents in making the purchase; that he was an electrician by occupation and had been in the business twenty-seven years; that he assisted in ordering the machine; that when he started the machinery, the exciter did not get up the proper rate of speed on account of the relative size of the pulleys. "The pulley on the driver of the alternator was eight inches and the pulley on the exciter was six inches, and only gave 1200 revolutions in the place of 1900 revolutions. I think we waited about thirty days to get another pulley. When we got another pulley, we started up the machinery. We did not discover anything at first, but afterwards found out that the volts did not register properly on the volt meter, which is the same on an electric circuit as a steam gauge. After burning out the lamps we found it did not register properly. The volt meter should have registered 104 volts. When we first started up, we ran it at 104 volts and discovered that it burned out the lights and transformers. Two transformers were burned. We burned out two barrels of lamps, 250 in a barrel. We tried a barrel from one company and then changed to another company and found they burned out also. . . . The machine is worth nothing; except, I suppose, the price of its weight in cast iron and junk. . . . They had made two propositions, one a General Electric, and the other a Thompson-Houston. We ordered the General Electric. When the machine came, I saw they had not sent the one ordered and told Mr. Wicks as soon as we unboxed the machine. The general Electric was to have been 25 kilowatts. The Thompson-Houston 30 kilowatts, 125 cycles, 1050 volts, 1500 speed. The machine made 900 revolutions as shown by the speed indicator. The exciter made 1900. The Thompson-Houston with a speed of 1500 was cut down to 900 rev-

olutions per minute. It being a 30 kilowatt, could be made a 25 kilowatt. Being a 125 cycle, it could be cut down to 75 cycle and they did it. It could be made into a 60 cycle if properly wound. The winding looks like the old original winding; and if it is, it must remain 125. . . . The Thompson-Houston has no connection with the General Electric, but is a separate machine; it is a different type of machine altogether. . . . I put the value of that machine worth nothing more than old junk, because it is not standard. If it had been a 60 cycle machine, it would have been worth the purchase price, $400."

He also testified that they purchased at the same time a circuit breaker to be used in connection with the General Electric machine, which the appellant failed to furnish. Also, that as a part of the same bill, and as an essential part of the lighting plant, one ammeter and one volt meter, but that the ammeter and the volt meter furnished were not built to be used with the machine that was sent, by reason of which the respondents were damaged in the sum of eighty dollars. Other evidence was introduced by the respondents tending to support their counterclaim. Evidence was introduced on the part of the appellant tending to show good faith on its part and that they furnish respondents the machine that they agreed to furnish and complied in every respect with respondents' order, and that the machine sold had been tested and was according to representations and was worth the sum for which it was sold.

At the trial, the court gave in behalf of respondents, the following instruction:

"The court instructs you that defendants admit the purchase of the electrical transformers from the plaintiff to them and that they have not paid for same, and that they owe plaintiff sixty dollars for them. But defendants have set up several distinct causes of action

against plaintiff. Now if you shall find the issues on any one or more, or on all of these causes of action for defendants, you will ascertain from the evidence the aggregate amount of damages, if any, suffered by them on these several causes of action, and if the amount so found by you for defendants exceeds sixty dollars, then you will deduct the sixty dollars due the plaintiff from the total amount you shall find due defendants, and render your verdict for defendants for this difference. If you shall find that the aggregate amount of damages suffered by defendants, as set out in their several causes of action, shall be less than sixty dollars, then you will deduct such sum from the sixty dollars and give a verdict for the plaintiff for the difference."

To the giving of this instruction the appellant objected and excepted. It will be observed that this instruction does not undertake to give the law applicable to each item of respondents' counterclaim, but directs in what way the jury shall proceed to ascertain the aggregate amount of respondents' damages in case the jury should find for them on their several causes of action. Appellant complains that the court erred in not instructing as to each item of respondents' counterclaim. Section 748, Revised Statutes 1899, concerning instructions in civil cases, provides: ". . . either party may move the court to give instructions on any point of law arising in the cause, which shall be in writing and which shall be given or refused." This section, and our practice, does not require that the trial court should instruct in civil cases unless requested so to do. Our Supreme Court by LAMM, J., in the late case of Morgan v. Mullhall, 214 Mo. l. c. 463, 464, 114 S. W. 4, in construing the above section, says: ". . . the better view is that it is permissive, not mandatory. Doubtless it conduces to the science of jurisprudence and the orderly administration of the law to have instructions defining the issues, putting it to the jury to find the fact and declaring the law on the fact when found, but it is within the knowl-

edge of the profession (and our decisions show) that cases are not infrequently tried, *nisi*, without them. That mere non-direction is not misdirection is a familiar, settled rule of appellate procedure.    Under that rule, before appellant can predicate reversible error on what a trial court does not say to the jury, he must first put the court in the wrong by asking it to say something, or else the court in trying to cover the case by instructions holds a false voice, or omits in   general instructions essential elements of the case."

In the present case, if the appellant desired instructions from the court as to the law governing each particular item, it should have asked them, and the failure of the court under such circumstances to instruct as to each of the items of the counterclaim is not reversible error.

Appellant complains of the following instruction:

"The court instructs you that if you find from the evidence that plaintiff contracted and agreed with defendants to furnish them with a General Electric alternator with a toothed armature, the speed of which was to be approximately nine hundred revolutions per minute, including exciter, and that it was guaranteed by plaintiff to be a twenty-five kilowatt, 60 cycle, eleven hundred volt, electric machine, and shall further find from the evidence that the alternator sent defendants was not the General Electric, sixty cycle machine purchased by them, but was in fact an alternator of some other cycle, then on this issue you will find for the defendants and assess their damages at such sum, if any, which you will find to be the difference between the alternator furnished defendants and the alternator which plaintiff agreed to furnish them, not exceeding the sum of five hundred dollars."

It will be seen that this instruction places the question before the jury for their determination as to whether the machine actually delivered to respondents was the one which the appellant contracted and agreed

to furnish, and directed in case the jury should find it was a different and inferior machine, they would return a verdict for respondents for such difference. Appellant objects to this instruction as not being a proper declaration of the law of this State. The rule is that where machinery or other articles are furnished by one party to another under a contract, and are retained by the party making the purchase, although such machinery does not comply with the contract requirements, yet if it is of value to him, he will be liable to plaintiff for such value, less whatever damages he may have sustained by plaintiff's failure to comply with the contract. [Fritsch Foundry & Machine Co. v. Goodwin Mfg Co., 100 Mo. App. 414, 74 S. W. 136, and numerous cases cited therein.] Under these authorities, it is clear that the instruction was a proper one under the issues and the evidence.

The appellant asked some five instructions which will not be considered as they were not applicable to the issues presented by the theory on which the case was tried.

Another ground claimed by appellant as reversible error is that the testimony at the trial was a surprise and that since the trial it has discovered material evidence; that it was surprised by the testimony offered by respondents that the machine in question would not produce arc lights, and that it was consequently unprepared to rebut such testimony, but that since the verdict it has discovered testimony which shows that the respondents were not authorized to make arc lights, or to maintain them on the circuit at Willow Springs, and that appellant could have proved that under the ordinance under which the respondents were acting, they were not authorized to produce arc lights.

This plea of surprise, coming after trial, is generally regarded by courts as a natural appendix to a lost cause. In this case, it is certainly phenomenal that the appellant after so many years of litigation and after three

jury trials should wake up to the fact that the respondents claimed that the machine for making lights was not adapted to that purpose. This is the more remarkable as its own witness, Samuel H. Martin, the vice-president of the appellant company, who gave his testimony in a deposition, describes at length the effect of increasing the number of cycles upon incandescent lamps and explained how lights and lamps would be affected by the amount of voltage generated. Such a surprise as is claimed in this case is not such as.is recognized by the law. A party litigant cannot be surprised, in the legal meaning of the word, because his adversary introduces evidence in support of the issues made by the pleadings, even though such testimony is false. [Workman v. Taylor, 24 Mo. App. 550.] At any rate, the newly discovered testimony was cumulative and a new trial will not be granted on newly discovered evidence which is cumulative. [State v. Johnson, 139 Mo. 197, 40 S. W. 767; Miller v. Whitson, 40 Mo. 97; Snyder v. Burnham, 77 Mo. 52; Dollman v. Munson, 90 Mo. 85, 2 S. W. 134.] It might be added in this connection that there was a total failure by appellant to make the necessary showing required by law in such cases in order to obtain a new trial.

This litigation was commenced more than five years ago. There have been trials by three juries, the first failing to agree and the other two giving verdicts for the respondents. The case has also been heard in the St. Louis Court of Appeals and remanded. upon questions not raised at the present trial.

Upon the consideration of the whole case, we find no reversible error that should further protract this litigation, and after two juries have found the issues the same way, we do not see that a third verdict would be likely to be in favor of the appellant, it appearing from the record that the judgment was for the right party. [In re Estate of Imboden v. Union Trust Co., 128 Mo. App.

555, 107 S. W. 400.] Finding no substantial error in the record that would warrant a reversal of the judgment, the same is accordingly affirmed. All concur.