W. M. GUMMERSON, Respondent, v. KANSAS CITY BOLT & NUT COMPANY, Appellant.

Kansas City Court of Appeals, December 7, 1914.

1. NEGLIGENCE: Manufacturers: Injury to Eye. The plaintiff was employed to shear pipes that had been flattened by a machine. The place at which he was working was near the latter machine, and as he reached down to secure a pipe a substance squirted from a pipe, which was being flattened, and struck him in the eye. *Held*, that the demurrer to the evidence was properly overruled.

2. ———: ———: ———. A master is not negligent towards his servant when he conducts his business in the manner in which other prudent persons customarily conduct the same business. The master is liable for the consequences of negligence, not of danger, and his duty towards his servant does not embrace the elimination of risks or dangers which inhere in the work when conducted in an ordinary and reasonably careful manner. Such dangers and risks are assumed by the servant.

3. DEFINITIONS: Natural Dangers. The term *natural dangers* may be defined as meaning those which reasonable care and prudence, having regard not only to the safety of the servant, but also to the necessities of the business, cannot be expected to suppress.

4. DEFINITIONS: Negligence. The term *negligence* when used to refer to a master's duty—has been well defined as "the

Gummerson v. Bolt & Nut Co.

omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do."

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

AFFIRMED.

*Ress Turpin* and *James E. Taylor* for appellant.

(1) Plaintiff's petition does not state a cause of action against defendant. Barnett v. Paper Mill Co., 149 Mo. App. 498; Lohmeyer v. Cordage Co., 214 Mo. 685; Cole v. Lead Co., 240 Mo. 397; Bair v. Heibel, 103 Mo. App. 621; Roundtree v. Cement Co., 156 Mo. App. 679. (2) No cause of action was proved. Brands v. Car Co., 213 Mo. 698; Saversnick v. Schwarzschild & Sulzberger Co., 141 Mo. App. 509; Chrismer v. Telephone Co., 194 Mo. 189; Coin v. Lounge Co., 222 Mo. 488; Shinners v. Mullins, 136 Mo. App. 298; Brandt v. Beweries Co., 159 Mo. App. 568; Wilkinson v. Bottling Co., 154 Mo. App. 563. (3) Respondent's only instruction was erroneous. Casey v. Bridge Co., 114 Mo. App. 47; Delo v. Mining Co., 160 Mo. App. 38; Cornett v. Railroad, 158 Mo. App. 360.

*Leonard Ulmann* and *John L. Wheeler* for respondent.

(1) Plaintiff's petition states a cause of action. Hysell v. Swift, 78 Mo. App. 39; Nickel v. Pape Stock Co., 95 Mo. App. 226; Dean v. Railroad, 199 Mo. 386; Duerst v. Stamping Co., 163 Mo. 621. (2) A cause of action was proved. Parker v. Cushman, 195 Fed. 715; Reed v. Railroad, 94 Mo. App. 379; Depui v. Railroad, 110 Mo. App. 123; Brunke v. Telephone Co., 115 Mo. App. 36. (3) Respondent's only instruction was not erroneous. Lathrop v. Railroad, 135 Mo. App.

16; National Stamping Works v. Wicks, 144 Mo. App. 249; Morgan v. Mulhall, 214 Mo. 451. (4) Was the case entitled to go to the jury? Wharton on Negligence (2 Ed.), sec. 3; 1 Shearman & Redfield on Negligence (5 Ed.), sec. 3; Webb's Pollock on Torts (Eng. Am. Ed.), 42; Ray on Negligence of Imposed Duties, p. 133-4; Webb's Pollock on Torts (Enlarged Am. Ed.), 45, 46; McMahon v. Express Co., 132 Mo. 647; Fishburn v. Railroad, 127 Iowa, 492.

JOHNSON, J.—Plaintiff was injured while in the service of defendant as a common laborer and sued to recover his damages on the ground that his injury was caused by a negligent breach of defendant's duty to exercise reasonable care to furnish him a reasonably safe place in which to work. The answer is a general denial and pleas of contributory negligence and assumed risk. A trial in the circuit court resulted in a verdict and judgment for plaintiff. Defendant appealed.

Defendant, a manufacturer of nuts and bolts, employed plaintiff to work at common labor in and about its factory at Sheffield near Kansas City. On the third day of his employment he was assigned to the task of operating shears for cutting iron after being instructed in the proper method of using them. His post was in the same room with, and about twenty feet from, an electric hammer and anvil. The raw material from which defendant manufactured nuts and bolts consisted almost entirely of used and discarded iron pipes which defendant procured from dealers in scrap iron and from other sources. These pipes were of different sizes and lengths, many were bent and twisted into various shapes, and as a general rule defendant had no knowledge of the character of their former uses. Many of them were rusty and foul inside and some contained a residue of liquids which had flowed through them while they were in use. Defendant's scrap piler,

introduced as a witness by plaintiff, testified that the pipes which were of various sizes and lengths came in cars from the scrap dealers and that generally "they contain dirt, grease, soap and various kinds of filth." The manager of defendant testified "the pipe is, to begin with, old pipe, it is scrap pipe when it is bought, which means that it is rusty and dirty, just as any old, discarded iron or metal would be." "Q. You buy pipe that has been used in these various factories, in the manufacture of soap and other articles haven't you? A. We are buying pipe anywhere we can find it." Further he said that "all pipes contain some residue of the material used in them before they were discarded . . . it is not cleaned before it is sent to us."

It is conceded that no inspection of the ends of the pipes was made for the purpose of detecting and removing such liquid substances as might be dangerous and it is claimed by the witnesses for defendant that the method of work generally followed in that kind of factory ignores the observance of such care as being unnecessary and commercially impracticable. The first process to which the pipes are treated is that of being passed, one by one, over the anvil, and subjected to the rapid battery of the hammer which mashes the pipe into a flat bar. The bar then is taken by the operator of the shears and cut into short lengths which are bundled together and taken to the furnace. While plaintiff was working at the shears and had turned, facing the anvil, to pick up another bar, a pipe just being started over the anvil was struck on the end by the hammer and one of the results of the blow was to squirt a whitish and highly acid or caustic liquid from the end of the pipe, with such force as to carry it to plaintiff, and a portion of the liquid struck him in the eye, burning and permanently injuring the eyeball.

Plaintiff testified that the liquid "was something like soap or lye . . . kind of white-looking . . .

looked like soap," that "quite a little bit" struck his eye and "I took my hand like that and whipped it out of my eye as soon as it hit me . . . it looked like soft soap and had some kind of acid in, it burned."

Another workman, a witness for plaintiff, testified: "Well I think it had something strong in it from the way it burned my neck but what it was I couldn't say . . . it was soft something like oil, it would run just like oil, it was very soft, some of it and some of it was perfectly dry but in this particular instance it was soft." A physician who treated plaintiff for the injury testified: "On August 22, 1910, Mr. Gummerson came to my office with a bad—very bad eye, it gave me the appearance of a burn, he had some four or five scars over and around the ball of the eye and considerable irritation of the conjunctive, or the lining membrane around the eyeball, and at that time there was a great deal of irritation, of course, due to the injury."

The evidence as a whole tends to show, first, defendant knew that pipes were likely to be received which carried a residuum of deleterious and dangerous substances such as strong acids and caustics and, second, that the pipe under consideration contained some such substance.

The negligence averred in the petition is "that all the injuries to plaintiff as aforesaid were caused by the negligence and carelessness of the defendant, its vice-principal, agents and servants in mashing and crushing said pipe when defendant saw, or by the exercise of ordinary care could have seen, that said pipes contained some soap and lye, or other material of liquid. ingredients of like nature and carelessly and negligenty failing to provide a guard or shield to prevent soap or lye or other material of liquid ingredients of like nature from flying or being thrown into the face of this plaintiff."

The points in the argument of counsel for defendant on the demurrer to the evidence that the petition

does not state a cause of action and that no cause of action is proved will be considered together. The application of the liberal rules employed in the construction of a petition after verdict leads to an analysis resulting in the conclusion that two specific acts of negligence are included in the petition, viz., (1) that defendant knew, or by the exercise of ordinary care could have known of the danger and removed it in time to have avoided the injury and (2) that defendant negligently failed to provide a screen between the anvil and the place where plaintiff was required to work, to guard him against such dangerous missiles.

In other words plaintiff's theory is that an ordinarily careful and prudent master in the situation of defendant would have done one of two things for the protection of his servant, i. e., inspected the forward ends of pipes before putting them under the hammer for the purpose of discovering and removing loose substances which might be converted into dangerous projectiles under the initial blows of the hammer, or in the absence of such inspection and cleansing, would have put up a barrier between the two machines to protect the operator of the shears.

It is conceded by counsel for plaintiff that the statute relating to the guarding of machinery has no application to this case and acts of negligence we have noted are based on the ground of an actionable breach of the master's common-law duty to exercise reasonable care to furnish his servant a reasonably safe place in which to work.

The position of defendant is that the method of work employed in the factory was the usual and ordinary method for doing such work and that the risk which resulted in the injury was one of the incidental risks of the business assumed by plaintiff when he accepted the employment. Defendant was engaged in a lawful business, in converting wornout scrap iron into valuable and useful articles, and would be justified in

adopting, and, indeed, compelled by competition to adopt and follow a method of work that would be practical and commercially profitable. The courts of this State have said a number of times that a master is not negligent towards his servant when he conducts his business in the manner in which other prudent persons customarily conduct the same kind of business. [Brands v. St. Louis Car Co., 213 Mo. 698; Saversnick v. S. & S. Co., 141 Mo. App. 509; Chrismer v. Telephone Co., 194 Mo. 189; Coin v. Lounge Co., 222 Mo. 488; Barnett v. Star Paper Mill. Co., 149 Mo. App. 498; Shinners v. Mullins, 136 Mo. App. 298; Brandt v. Breweries Co., 159 Mo. App. 568; Wilkinson v. Andriano Bottling Co., 154 Mo. App. 563.] Masters are liable for the consequences of negligence, not of danger, and their duty towards their servants does not embrace the elimination of risks or dangers which inhere in the work when conducted in an ordinary and reasonably careful manner. Such dangers and risks are assumed by the servant.

But the duty of the master does call for the exercise of reasonable care to keep the dangers of the work within the scope of those classed as inherent. The fact that the work may be naturally dangerous, instead of absolving the master from the duty of exercising reasonable care to protect his servants who voluntarily and at their own risk accept its natural dangers, requires the performance of that duty in a way to confine the risks within their natural bounds. His right to conduct his own business in his own way does not extend beyond the limits of reasonable care, and if his servant suffers injury from his failure to conduct his business within those bounds, he will be liable, however great the natural dangers of the work may be. The term *natural dangers* may be defined as meaning those which reasonable care and prudence, having regard not only to the safety of the servant, but also to the necessities of the business, cannot be expected to

suppress, while the term *negligence*—when used to refer to a master's duty—has been well defined as "the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do." [Webb's Pollock on Torts (En. Am. Ed.) 42.]

Would a man of that description have done what defendant did—place an inexperienced and ignorant man at work in a place where lurked a malignant and, to him, concealed danger, which it is apparent from all the evidence could have been avoided by a slight effort on the part of the master? We note in the testimony of the witnesses for defendant the emphasis laid upon the facts that the machines for mashing the pipes and cutting the bars were of the usual type and free from defects; that their relative positions were those sanctioned by ordinary usage and that it was not the usual custom to have a screen between the anvil and the shears for the reason that it would seriously interfere with running long pipes over the anvil, and with the rapid moving of hammered pipes to the shears.

But all this evidence—the purpose of which is to bring the conduct of defendant within the domain of custom and usage—falls short of being completely exculpatory and is found, on analysis, to give undue prominence to facts not in controversy and to be deficient in vital respects. Plaintiff concedes that the machines were of proper construction, in good repair, and properly placed; that it was customary to use scrap pipe and to follow the course of treatment prescribed by defendant's method of work and that the proper conduct of the work involved the natural risks of injury to him from missles thrown out by the rapid blows of the powerful hammer on wornout, rusty and dirty pipes; but he denies that either custom or reasonable care would sanction the practice of running

pipes, collected from all sorts of places, and known by the master to be charged in some instances with highly dangerous matter, over the anvil without any inspection or effort to remove such dangerous matter.

We think plaintiff is right in this position and that the evidence of defendant does not meet the issue thus tendered, at least, not so conclusively as would warrant us in holding, as a matter of law, that the injury was the result of one of the assumed risks. We need no expert to tell us that the duty of inspection could have been performed quickly, with little skill and effort. All that was required was to look into the forward end of each pipe and scrape away any loose substance that might be turned into a projectile by the first blows of the hammer. It was not necessary to do more, since the first strokes would seal the end of the pipe and prevent the escape of its contents.

In prnciple this case is very similar to that of Nickel v. Columbia Paper Stock Co., 95 Mo. App. 226, where a rag and paper sorter was injured by poisonous material brought from a hospital. We said in the opinion:

"We cannot see how defendant can construct any reasonable theory of escape from the wrong done the plaintiff. If the foul and poisonous material was collected by agents for whose acts it is responsible, then it should answer to plaintiff for the consequences. And if the material was collected without defendant's knowledge, or authority, then the jury has found that common prudence would have dictated an inspection thereof before handing it over to plaintiff for sorting. And if the business was such that such an injury as happened to plaintiff was likely to unavoidably follow, then it was defendant's duty to have warned the plaintiff of the danger, or to have taken precautions against such consequences. [Hysell v. Swift Packing Co., 78 Mo. App. 39; Mather v. Rillston, 156 U. S. 391; Smith

v. Car Works, 60 Mich. 501; Smith v. Iron Works, 42 N. J. L. 467; Fox v. Peninsular Works, 84 Mich. 676.]"

It may be conceded that it would have been impracticable to have kept a screen between the anvil and plaintiff but the jury were entitled to infer from all the evidence that a reasonably careful and prudent master would have exercised care to prevent the discharge of unnecessary missiles from the pipe ends, especially those of such a peculiarly malignant character.

The argument that plaintiff has injected this issue of negligence into the case on appeal and tried the case in the circuit court on the sole theory of negligence in not screening the anvil is supported neither by the petition which, as we have shown, charges negligence in failing to prevent the discharge of dangerous liquids from the pipe ends, nor by the record of the trial; which contains proof of all the ingredients of such negligence.

The demurrer to the evidence was properly overruled.

The objection of defendant to plaintiff's instruction on the measure of damages is found to be untenable under the rule of the following cases: Lathrop v. Railroad, 135 Mo. App. 16; Stamping Works v. Wicks, 144 Mo. App. 249; Morgan v. Mulhall, 214 Mo. 451.

The judgment is affirmed. All concur.